## Owen *v.* New York Life Ins. Co.

[89 South, 770. No. 21781.]

Insurance. *Where contract provides insurer shall apportion dividends to premiums, insurer cannot declare forfeiture for nonpayment prior to notice of dividend.*

Where a life insurance policy provides that the insured shall share in the profits of the company, to be ascertained annually, and that at the end of the second insurance year, and on each anniversary thereafter, such dividend as shall have been apportioned by the company to the policy will, at the option of the insured, be applied toward the payment of premiums, and where the

application, which is made a part of the contract of insurance, contains express directions that all dividends shall be applied toward the payment of premiums, after the end of the second insurance year, the company cannot declare the policy forfeited for nonpayment of premiums until it has given notice to the insured of the amount of the dividend apportioned to. the policy.

APPEAL from circuit court of Bolivar county.

HON. W. A. ALCORN, JR., Judge.

Suit by Mrs. Miriam R. Owen against the New York Life Insurance Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

*Roberts & Hallam,* for appellant.

The brief of appellee relies almost exclusively on the fact that because the full amount of the premium of four hundred and fourteen dollars and thirty cents was not paid by October 24, 1918, or within thirty days thereafter the policy became forfeited, and in reliance on this defense quotes as follows from *New York Life Insurance Company* v. *Alexander,* 83 So. 93: "When a life insurance policy provides for a forfeiture of the insurance, in case of a failure to pay premium, the policy is forfeited." In the same breath counsel argues: "The insurance automatically expired when the insured failed to pay the third premium within the time required by the contract." Citing *Pope* v. *New York Life Insurance Co.,* 181 S. W. 1046, and *New York Life Insurance Co.* v. *O'Don,* 100 Miss. 219.

We submit that the argument is contradictory in itself. We have shown in our original brief that in a term policy such as that considered in the case of *Cason* v. *Mutual Life Ins. Co. of New York,* 184 Pac. 296, the contract automatically expires at the end of the term and in order that the policy may still have life, that at the end of each term it is necessary to make a new contract of insurance by paying the premium for a new term.

But in order that a contract may be forfeited, it is necessary that something should still exist, as distinguished from something that has automatically expired, that is subject to forfeiture; and if there is something which can be forfeited, it could not have automatically expired, and the ground of forfeiture is something which can be waived.

So that, even if the appellee had not contracted with the insured in the case at bar that the dividends accruing on this policy should be applied to the payment of premiums, still, by failing to notify the insured of the amount of the dividend accruing on October 24, 1918, the non-payment of premium promptly at maturity or within thirty days thereafter, the payment of the premium being a condition subsequent. *Reed* v. *Bankers Reserve Life Ins. Co.*, 192 Fed. 408; *Phoenix Ins. Co.* v. *Doster*, 106 U. S. 30, 1 Sup. Ct. 19, 27 L. Ed. 65.

Counsel also confuses the right of an insured to demand that an insurance company accept only a partial payment of premium, and the right of an insured to have notice of the amount of a dividend and to have the dividend applied toward the payment of the premium. Of course the insured must be willing to pay the balance after he ascertains the amount of the dividend.

Counsel also in his brief casually observe that there is no proof in the record that the appellee did not give the insured notice of the amount and declaration of the dividend of sixty-seven dollars and fifty cents, but does not seriously stress the point. Even if the burden of proof as to the giving of this notice of the amount of the dividend was not on the defendant, as clearly intimated in the case of *Cason* v. *Mutual Life Ins. Co., supra,* yet all of the facts and circumstances in this record go to show that the notice was not given.

Certainly, if the appellee had given the insured notice of the amount of his dividend, it would have told Mr. Owen so, in this letter. But the letter is silent on the subject. It merely declares that the dividend was apportioned to the

policy on that day. It says nothing about a notice of a dividend.

Add to this the fact that the notice which is attached to the agreement of counsel in this case filed in the supreme court, in which the appellant was notified to produce at the trial in the lower court certain documents mailed to the deceased in his lifetime, among them several notices of premium due, is silent as to a notice of the declaration of a dividend, and the case is conclusive. If such a notice had been mailed to the insured, the first thing the appellee would have done would have been to notify Mrs. Owen to produce that notice at the trial or that secondary evidence would be offered to show its contents. Counsel is right; we did charge in our original brief that the defendant did not give the notice in question. We now renew the charge. This being the state of the record, the peremptory instruction was improper. The rule as to the giving of a peremptory instruction is thus laid down: "It is only in cases free from doubt that the court will withdraw a case from the jury." *R. R. Co.* v. *Doyle,* 60 Miss. 977.

When the evidence is sufficient to warrant a verdict for a party in any view of it which may be legally taken, a peremptory instruction in favor of his opponent should not be given. *R. R. Co.* v. *Boehms,* 70 Miss. 11; *Holmes* v. *Simon,* 71 Miss. 212. If the evidence supports or tends to support the plaintiff's case, a peremptory instruction is improper. *Swan* v. *Ins. Co.,* 52 Miss. 704; *Whiting* v. *Cook,* 53 Miss. 551; *Carson* v. *Leathers,* 57 Miss. 650; *Lowenstein* v. *Powell,* 68 Miss. 73; *Richardson* v. *Toliver,* 71 Miss. 966; *Thrasher* v. *Gillespie,* 52 Miss. 840; *Vantrell* v. *R. R. Co.,* 69 Miss. 435; *Timberlake* v. *Compress Co.,* 72 Miss. 323.

A peremptory instruction to find a certain way is improper unless the court, on the evidence, would set aside a contrary verdict: *Bernheim* v. *Dibrell,* 66 Miss. 199; *Holmes* v. *Simon, supra.* A verdict will not be disturbed though no member of the court would have found as the jury did. *R. R. Co.* v. *Cantrell,* 70 Miss. 329.

56

This court has said: "We are not authorized to exercise the difficult and delicate function of declaring the verdict of a jury manifestly wrong, except in those very rare cases where the evidence shows it to be so most convincingly and indubitably. *King* v. *Rowan,* 82 Miss. 18. See, also, *Rhymes* v. *Electric Ry. Co.,* 85 Miss. 147; *A. & V. Ry. Co.* v. *Dear,* 87 Miss. 339; *Carlton* v. *King,* 40 So. 191; *McCaughn* v. *Young,* 37 So. 839; *Bingham* v. *Davidson,* 37 So. 738; *I. C. R. R. Co.* v. *Schultz,* 39 So. 1005.

Respectfully submitted.

*A. H. Longino,* for appellee.

The plaintiff's attorneys as appears from their brief, on file, seems to have abandoned all other points in the case except those raised by the second and fifth counts of the declaration, the effect of which being, first—that on the 24th day of October, 1918, the defendant had in its possession sixty-seven dollars and fifty cents, which had, on that date, accrued to the defendant as a divisable surplus and which the defendant was bound to apply as partial payment on said third premium; and that by making such application, the policy would have been maintained in force beyond the date of Mr. Owen's death.

It is manifest from the terms of the policy that it was never intended that the dividend in question should be applied toward the payment of said premium, unless the insured had paid within the time required, the balance thereof. On this point appellee directs the court's attention to the provision of section 1, of the policy under the head of application of dividends (B) applied "toward" payment of the premium:

"The plain meaning of the words, "toward payment of the premium" clearly negatives the idea contended for by appellant in this case, who never sought to ascertain, between the due date of premium and the expiration of the policy, the amount of said dividend nor made any tender,

nor offered in any way to pay the balance of the premium until after the policy, by its expressed terms had expired.

For the sake of argument let it be supposed that the insured had given the company timely notice before default, in the balance of the premium in question, that he elected to apply this dividend "toward" the payment of that premium, and as happened in the case, he did not pay the balance of the premium, can it be insisted that the company would have been bound to carry the insurance as long as that dividend would buy continued insurance? I am unable to find any decision of any court holding that an option in a policy authorizing the dividend to be applied "toward" the payment of premium meant that the dividend must be so applied whether or not the insured paid the balance due on such premium during the life of the policy; unless the insurance company at the time had funds in its hands belonging to the insured in a sufficient sum to pay the whole amount due on said premium. I respectfully submit that the contention of appellant above is at variance with the case of the *Mutual Life Ins. Co. of New York* v. *Breland,* 117 Miss. 479.

The question of a partial payment of the premium was not technically involved nor was it specifically decided by this honorable court in the Breland case, for the reason that in that case the court expressly stated: "That the allegations of the bill are plain, that the company had in its possession at the time of the death of the insured a sum in excess of the past due third annual premium."

Besides the contract sued on expressly provides as follows: "All premiums are payable on or before their due date."

That the premium is always considered as payable annually in advance ,but by agreement in writing and not otherwise, may be made payable in semi-annual payments or quarterly payments.

The policy further provides: "The payment of the premium shall not maintain the policy in force beyond the date when the next premium becomes due," etc.

From the above quoted terms of the policy it seems clear that when the insured failed to pay the premium due, within the time required, that the policy then and there expired.

In support of this claim appellee begs to call the court's special attention to a fully and well digested opinion by the supreme court of Colorado. *Clanson* v. *Mutual Life Ins. Co. of New York.*

The above case held, that where a yearly renewal policy, which required the payment of premiums in advance within a period of thirty days after maturity, provided that, except as hereinafter named, the payment of a premium or installment shall not maintain the policy beyond the date when the next premium is payable, and that dividends would be paid, but gave the insured the option to have such dividends applied on premiums, and where default was made in payment of an annual premium, and that such default continued for more than the grace period of one month, the policy lapsed; and that such was true even though said dividends were due, and which if applied to payment of the premium would have extended the policy beyond the time of the death of the insured.

This decision by the Colorado court is on all-fours with the one now under consideration here, and seems to fully sustain appellee's contention. Though the appellant insists that the decision in said cause was predicated on "a renewal term policy, yet the appellee insists that by a comparison of the terms of the policy in the present case with the one involved in the Clason Case discloses that said contention presents a distinction in name only, without a difference in effect as to the two policies, under consideration.

Again the supreme court of United States in *Slocum* v. *Insurance Co.,* 228 U. S., in discussing the question whether an insurance company is bound to accept partial payments of premiums said: "The policy plainly provided for the payment of the stipulated premium annually within the month of grace following the due day, and as

plainly excluded any idea that payment would be made in installments distributed through the year; concededly there was no payment of the whole premium in question, and if a partial payment was not within the contemplation of the policy, nothing was gained by handing the agent a check for a part of it, unless what he did in that connection operated as a waiver of the full and timely payment."

Therefore, all the courts seem to hold against the idea of partial payment of premiums. Certainly such is the weight of authority and I direct this court's attention to some of the cases decided by the supreme courts in all parts of the country, as follows: *Iowa Life* v. *Lewis,* 107 U. S. 335, 47 L. Ed. 204; *Wheeler* v. *Connecticut Mutual,* 82 N. Y. 543; *Ibs* v. *Hartford Life,* 137 N. W. 289 (Minn.); *Richardson* v. *Mutual,* 18 S. W. 164 (Ky.); *Slocum* v. *New York Life,* 228 U. S. 364; *Bank* v. *New York Life,* 54 S. E. 643 (Ga.); *Security Life* v. *Underwood,* 150 S. W. 293 (Texas); *Wilcitts* v. *Northwestern,* 81 Ind. 300.

With equal unanimity the courts of the country seem to have held that where policies provided that dividends should be applied toward the payment of premiums, the agreement is applicable, when, and only when, the insurer has funds in its hands belonging to the insured, sufficient to cover the whole premium; or when the policyholder advances the difference between the amount due, and the sum which belongs to him in the hands of the insurance company, and in support of that contention, I beg to refer this court to the following decisions: *Mutual Life* v. *Hanley,* 188 S. W. 829 (Ark.); *Union Central Life* v. *Caldwell,* 58 S. W. 355 (Ark.); *Mutual Life* v. *Girard Co.,* 100 Pa. 172, 97 Pa. 15; *Matlack* v. *Bank,* 36 Atl. 1092 (Pa.); *Knight Templars* v. *Meister,* 68 N. E. 434 (Ill.); *International Life Ins. Co.* v. *Breeland,* 117 Miss. 479; *McNaughton* v. *Des Moines Life,* 122 N. W. 764; *Northwestern* v. *Fort,* 82 Ky. 269; *Smith* v. *St. Louis Mutual,* 21 Tenn. Chan. 727; *Hull* v. *Northwestern,* 39 Wis. 397; *Franklin Co.* v. *Wallace,* 93 Ind. 7.

It would seem from the reading of their brief in this case that the appellant's counsel have practically abandoned all other issues presented by the pleading in the case and to have planted their insistence for a reversal on that part of the fifth count of the declaration, viz: That the defendant failed to give to the insured written notice of the amount of the divisible surplus belonging to the policy on November 24, 1918; but I submit that on this point appellant's counsel are proceeding upon altogether erroneous hypothesis, and in proof thereof, the court's attention is again directed to the fifth count of the declaration and to the defendant's plea thereto.

The appellant by declaring that said notice was not given, when denied by defendant's plea, was compelled to sustain her charge by proper proof, and she utterly failed to discharge that burden cast upon her by the pleadings. A careful reading of the evidence in the record fails to disclose the introduction of any proof to sustain her charge that the said notice was not properly given.

In passing on a demurrer to the complainant's bill in the *Breland case, supra* (on the ground that said bill was defective in not expressly charging that any portion of the surplus had been set aside by the insurance company, or placed to the credit of the policy) the court held the demurrer bad, on the ground that it would be presumed that the insurance company, had complied with its policy contract, to declare dividends and ascertain, and set apart the surplus annually. (78 So., p. 362.) Besides by New York statutes, insurance companies of that state are required to give notice to their policyholders promptly on the accrual of such dividends.

In the absence of proof, therefore, to the contrary it must be presumed that the appellee complied with the said law. The authorities, so far as I am able to find, hold substantially as follows: "Whoever desires any court to give judgment for any legal rights or liability, dependent on the existence or non-existence of facts which he

either asserts or denies to exist must prove that such facts do or do not exist.   Jones on Ev., sec. 180 (Pocket Edition) ; Stephens on Ev., art. 93.

"It is reasonable that one who asserts a fact necessary to the claim or defense should prove such fact.   It is well settled that whoever asserts a negative must, as in other cases, establish the truth, if material to his cause, by a preponderance of evidence."   Jones on Ev., sec. 180, and any other authorities there cited.   Where a party grounds his right of action upon a negative allegation he must prove it.   *Kerr* v. *Freeman,* 33 Miss. 292.

The party on whom the burden of proof in any cause rests may be determined by considering which would succeed if no evidence were offered by either side, and by examining what would be the effect of striking out of the record the allegation to be proved.   The *onus* must be on the party who, under such tests, would fail in suit.   *Porter* v. *Still,* 63 Miss. 357.

The appellant's attorneys, however, by a mere stretch of imagination, still insists and have charged in their brief that the defendant did not give the notice in question.   By plaintiff's failure to make the proof required of her, she must lose on that point.   In addition to the legal presumptions above referred to, appellee says that the notice was given on or about the 24th day of October, 1918, to the insured at Cleveland, Mississippi, the place of his residence and post office address.

In addition to the legal presumptions above referred to appellee says that the notice was given, on or about the 24th day of October, 1918, to the insured at Cleveland, Mississippi, the place of his residence and post office address; and that the same was duly received by him, is, I think, inferable from the fact, that knowing thereof, he informed Mr. J. C. Roberts, when arranging to make tender of the premium on the evening of November 29, 1918, that a dividend was due on the policy.

The appellee respectfully asks that the judgment appealed from, be affirmed by this honorable court.

COOK, J., delivered the opinion of the court.

Mrs. Miriam R. Owen, plaintiff brought suit as bene-ficiary in an insurance policy for ten thousand dollars, is-sued by the New York Life Insurance Company, defendant, upon the life of her husband, Thomas S. Owen. At the con-clusion of the testimony a peremptory instruction was granted in favor of the defendant, and from the judgment. entered in pursuance of this instruction this appeal was prosecuted.

The facts necessary to be stated are as follows: On the 24th day of October, 1916, the appellee issued its policy of insurance on the life of Thomas S. Owen, payable at his death to appellant. The policy provides that it is issued in consideration of the payment in advance of the sum of four hundred and fourteen dollars and thirty cents, con-stituting the first premium and maintaining the policy to the 24th day of October, 1917, and of a like sum on said date and every twelve calendar months thereafter during the life of the insured until the maturity of the endow-ment.

Under section 1 of the policy it is provided as follows:

"The proportion of divisible surplus accruing upon this policy shall be ascertained annually. Beginning at the end of the second insurance year, and on each anniversary thereafter, such surplus as shall have been apportioned by the company to this policy shall, at the option of the insured be either (a) paid in cash; or (b) applied toward payment of premiums; or (c) applied to purchase of a par-ticipating paid-up addition to the sum insured; or (d) left to accumulate at such rate of interest as the company may declare on funds so held, but at a rate never less than three per cent. compounded and credited annually, and withdrawable in cash on any anniversary, or payable at the maturity of the policy to the person entitled to its proceeds; or (e) applied on the accelerative endowment plan as set forth below.

"If the insured fails to notify the company in writing within three months after the company shall have mailed to him a written notice of the amount of said dividend and the options available as aforesaid, which option he selects, the company will apply said dividend to the purchase of a paid-up addition to the sum insured; such paid-up addition may be surrendered for cash at any time not later than three months after any default in the payment of premium, and the cash value thereof shall never be less than the original cash dividend."

Under section 5 of the policy is found a provision that a grace of one month (not less than thirty days), subject to an interest charge of five per cent. per annum, was allowed for the payment of every premium after the first, during which time the insurance should continue in force, and this section also contains the following provision:

"The policy and the application therefor, copy of which is attached hereto, constitute the entire contract."

In the application, a copy of which is attached to and made a part of the policy, the applicant, Mr. Owen, was asked this question:

"(12)   Do you desire to apply the dividends on the acceleration endowment plan to mature the endowment at an earlier age?"

And in reply to this question he answered:

"No; to apply toward payment of premium."

On the 29th day of November, 1918, at a time when the insured was seriously ill at his home, he sent for his law partner, Mr. Roberts, and told him that he thought that was the last day on which he could pay his premium on this policy, and requested Mr. Roberts to look on his desk at the office, where he would find a notice from the company of the amount of the premium. In accordance with these instructions Mr. Roberts went to the office and found the notice of the amount of the premium; this notice being as follows:

"New York Life Insurance Company.

"Darwin P. Kingsley, President.

"Branch Office at Jackson, Miss. Nov. 19, 1918.

"Mr. Thomas S. Owen, Cleveland, Miss—.

Dear Sir: We regret to notify that, according to our records, the premium, four hundred fourteen dollars and thirty cents and interest, $——, on policy No. 6050630, due October 24, 1918, is not paid. The period during which the company may receive payment without any condition except interest at the rate of five per cent, per annum from the due date expires on November 24, 1918. After that date, in addition to payment of the amount due and interest thereon, the policy requires you to furnish evidence of insurability satisfactory to the company before reinstatement can be secured.

"The company realizes that the loss of insurance is something which every one should avoid, if possible, and desires to help a policy holder in every way consistent with the terms of the policy contract to keep it in force.

"We hope, therefore, that you will give this important matter your attention and write us at once concerning it, or, better still, if you are in this city, that you will call on us so that we may confer with you regarding this insurance.

"When you write, please give your full name, your address, and your policy number, so that we may send a prompt reply.

"Yours Truly,     H. H. GRAHAM, Cashier"

After finding this notice Mr. Roberts directed the president of his local bank to call the cashier of the First National Bank of Jackson, Miss., and instruct him to pay to the defendant's branch office at Jackson the amount of the premium, with interest, and this was accordingly done. Later in the day New York exchange for said sum was mailed to the First National Bank of Jackson. Upon receipt of the telephonic instructions so to do, the cashier of the bank at Jackson telephoned to the office of the defendant company, and stated that he had this payment in and and that it could take credit for the amount of this premium on the

next day's deposit. On the morning of November 30, 1918, the exchange was indorsed and delivered to a clerk of the defendant company, who in turn delivered it to the cashier of appellee's branch office. However, Mr. Owen, the insured, had died at three o'clock that morning.

On December 2, 1918, presumably without notice of the death of the insured, the cashier of appellee's branch office addressed a letter to Mr. Owen acknowledging receipt of the premium and stating that November 24, 1918, was the last day on which, under the terms of the policy, the company could accept payment of the premium, but that the company would consider the reinstatement of the policy if the insured would properly execute an inclosed application for reinstatement, and that pending the return of this application the remittance would be held subject to his order.

On October 24, 1918, "the end of the second insurance year," there was apportioned to the policy as a surplus or dividend the sum of sixty-seven dollars and fifty cents, and on February 18, 1919, the appellee wrote appellant as follows:

"New York Life Insurance Company.

"Darwin P. Kingsley, President.
"Jackson Branch Office, Century Building, Jackson, Miss.
"C. O. Wilkins, Agency Director.
"H. H. Graham, Cashier.
"Robert B. Mims, Resident Mgr.

Feb. 18, 1919.

"Mrs. Miriam R. Owen, Cleveland, Miss.—Dear Madam: Re Pol. No. 6050630—Owen, Deceased. We are pleased to hand you herein our check drawn on the First National Bank of this city to your order for sixty-seven dollars and fifty cents in payment of the dividend apportioned to the above numbered policy on October 24, 1918. You probably know that this policy became lapsed for the nonpayment of the premium due on October 24th, and was of no value at the time of the death of Mr. Owen.

"Your very truly,    H. H. GRAHAM, Cashier."

On February 18, 1919, appellee also returned to the Cleveland State Bank the draft for the premium which had been delivered to it on November 30, 1918. Appellant declined to accept the dividend check and promptly returned it to appellee, while the Cleveland State Bank advised appellee that pending the adjudication of the matter of loss, if any, under the contract between the company and Mr. Owen the money would be held subject to its orders.

The declaration filed in this cause contains six counts, but the sole and controlling issue made by the pleadings and presented here for decision is whether under the contract between the parties, as evidenced by the policy and application therefor, the right of the company to claim a lapse or forfeiture of the policy was waived by reason of the failure to notify the insured of the amount of the dividend which had been apportioned to this policy on October 24, 1918.

The policy here involved provided that the proportion of the divisible surplus accruing upon the policy should be ascertained annually, and that at the end of the second insurance year, and on each anniversary thereafter, such surplus as had been apportioned by the company to the policy would, at the option of the insured, be applied toward the payment of premiums. Under the express provisions of the policy the application therefore is made a part of the contract, and in this application the insured exercised his option to have all dividends accruing on the policy applied toward the payment of premiums. Thus at the very inception of the contract the company was put on notice of the insured's election to so apply all dividends.

The end of the second insurance year having arrived, the insured had the right to expect and demand that the company would carry out his direction to apply the dividends which had been apportioned to the policy for the two years in reduction of the annual premium then due. The insured could not know the amount of these dividends, as this information was peculiarly within the exclusive knowledge of the company, which had full control in the matter of dividends. Under these circumstances is was clearly the

duty of the company to notify the insured of the amount of the dividend, in order that he might know the amount in cash he was required to pay to discharge the premium, and if this notice was not given the company thereby waived the prompt payment of the premium and cannot declare a forfeiture. This view, we think, is founded upon reason and is supported by the great weight of authority. In *Phoenix Mutual Life Ins. Co.* v. *Doster,* 106 U. S. 30, 1 Sup. Ct. 18, 27 L. Ed. 65, it is said:

"Now, although the policy issued upon Riddle's life required payment annually of a specific sum as a premium, that stipulation must be construed in connection with the agreement set out in the application, that the premium might be discharged *pro tanto* by such dividends as were allowed to the insured from time to time. Whether the company, in any particular year, declared dividends, and what amount was available in reduction of the premium, were facts known, in the first instance, only to the company, which had full control of the matter of dividends. It certainly was not contemplated that the insured should every year make application, either at the home office or at the office of its general agent in Chicago, in order to ascertain the amount of dividends. The understanding between the parties upon this subject is, in part, shown by the practice of the company. Independently of that circumstance, and waiving any determination of the question whether the forfeiture was not absolutely waived by the act of the general agent, in sending notice to the insured after the day fixed for the payment of the premium due September 20, 1876, it was, we think, the company's duty, under any fair interpretation of its contract, having received information as to the post office of the insured, to give seasonable notice of the amount of dividends, and thereby inform him as to the cash to be paid in order to keep alive the policy."

In *Union Central Life Ins. Co.* v. *Caldwell,* 68 Ark. 522, 58 S. W. 361, the Arkansas court, in a well-considered case, held:

"In the absence of any stipulation in the policy, and of any directions otherwise by the assured as to the application of dividends which have been declared, it is the duty of a mutual company to apply such dividends to the payment of interest on loans made on the policy, when by so doing a forfeiture of all rights and benefits under the policy will be prevented. This is the rule in the case of premiums to keep the policy in force from year to year, and, of course, would be for the payment of interest on an ordinary loan, which prevents a sale of the policy. . . . The learned counsel for appellant says, "These cases all arise under very different facts from those existing in the case at bar, and these differences are so vital and essential in their nature as to make them valueless as authorities.' We will not review them here. But in our opinion the difference in the facts does not destroy the application or lessen the efficacy of the principle. It is true that in some of them there was a contract, custom, or course of dealing. But because insurance companies enter upon contracts or establish a usage in conformity to the doctrine above announced, from which they have not been allowed to deviate, does not prove the unsoundness of the doctrine itself, but rather the contrary. The doctrine does not arise out of the peculiar facts of any particular case. It does not depend upon contract, custom, or course of dealing for its existence and potency. It has its origin in that fundamental principle of justice which will compel one who has funds in his hands belonging to another, which may be used, to use such funds, if at all, for the benefit, and not to the injury, of the owner; for his consent to the one, and dissent to the other, will be presumed. . . .

"The authorities also establish the rule that it is the duty of the company, before taking a forfeiture for default in the payment of a maturing obligation, to notify the assured or beneficiary of the amount of declared dividends where such dividends are insufficient to meet the obligation. . . . These principles are founded upon reason and common fairness and honesty, and they will have ap-

plication wherever it becomes necessary to prevent a forfeiture, which is favored neither in law nor in equity."

Again in *Eddy* v. *Phoenix Mutual Life Ins. Co.*, 65 N. H. 27, 18 Atl. 89, 23 Am. St. Rep. 17, the New Hampshire court says:

"When the insured shares in the profits, and at the time when the annual premium becomes due cannot know what amount he will be required to pay the company, the insurers cannot insist upon a forfeiture until they give the insured notice of the amount he is required to pay."

In *Nall* v. *Provident Savings Life Assur. Soc.* (Tenn.), 54 S. W. 109, the principle is announced in the following language:

"Inasmuch as the insured was entitled, according to the terms of the policy, to certain reductions on premiums, the amount of such reductions from time to time to be fixed by the company, he could not know at any time, without notice, how much would be due, and for this reason there could be no forfeiture without notice."

Again in a note in 10 Ann. Cas. 688, it is said:

"The cases cited above have reference to premiums for fixed amounts, due at certain dates. But where, by the terms of the policy, the insured shares in the profits of the company and is entitled to have his premium discharged *pro tanto* by such dividends as are declared from time to time, it is well settled that the insurer cannot insist on a forfeiture for nonpayment of a premium until he gives notice of the amount of the dividends, in order that the insured may know what amount in cash he is required to pay."

See, also, *Home Life Ins. Co.* v. *Pierce,* 75 Ill. 426; *Reed* v. *Bankers' Reserve Life Ins. Co.,* (C. C.), 192 Fed. 408; Joyce on Insurance, sections 1166, 1320; 25 Cyc. 828.

Appellee contends, however, that, if it shall be held that the company was required to give notice of the amount of the dividends before declaring a forfeiture for the nonpayment of the premium, still the burden of proof was on appellant to show that no such notice was given, and that

she had failed to discharge this burden. If it be conceded
that the burden was on appellant to show that this notice
was not given, which we do not decide, we think there is
sufficient testimony in this record to warrant the submis-
sion of this question to the jury. The judgment of the
lower court is therefore reversed, and the cause remanded.

.   *Reversed and remanded.*