## SECURITY LIFE INS. CO. v. SEEBER.
### No. 4262.

Circuit Court of Appeals, Seventh Circuit.
July 3, 1930.

Arthur S. Lytton, of Chicago, Ill., for appellant.

Edmund Burke, of Springfield, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge.

This appeal is from a judgment in favor of plaintiff-appellee on a policy on the life of her deceased husband, William P. Seeber. There was a motion by defendant for a directed verdict.

The questions are: (1) Was the quarterly premium due August 15, 1925, paid within the 31 days of grace; (2) if not, and the policy lapsed, was it reinstated; (3) was the testimony of the actuary, construing the policy, properly admitted; (4) was there error in the instructions?

The evidence as to the payment of the premium is as follows:

For plaintiff: Seeber's former stenographer, testifying in 1928, solely from recollection, said that between 5 and 5:10 p. m., September 14, 1925, at Benton, Ill., she mailed Seeber's check of that date to defendant, in Chicago, in an addressed envelope furnished by defendant; that she knew Defendant's Exhibit 10 was not the envelope in which Seeber's check was sent, because either she or Seeber always wrote his return address on such envelopes. Exhibit 10 shows no return address. The letter, in due course, if so mailed, would have arrived at defendant's office on the morning of September 15th, within the days of grace.

For defendant: Defendant's cashier testified that her duties and practice, as cashier, for 15 years had been to receive the mail from the carrier, open it, and place the receiving date stamp on the inclosed letter or premium notice, but, if there was no letter or notice, she placed the stamp upon the

envelope; that when there was a question about the regularity of the payment, she kept the envelope pinned to the notice or letter. She had no independent recollection, but from those facts she identified the envelope, Exhibit 10, post-marked "Benton, Ill. Sep. 16 8 AM 1925," as the envelope containing the Seeber check and the premium notice, theretofore sent him by defendant, showing the receiving date, September 17, 1925, stamped thereon by her. Defendant's Exhibit 9, defendant's letter to Seeber dated September 19, 1925, acknowledged the receipt of the check, and stated it was returned because it came too late. The letter said, in part: "That we may accept your remittance, it is necessary that the policy be reinstated." Reinstatement application blank was inclosed. Seeber, under date of September 25th, filled out and returned to defendant the signed application for reinstatement, defendant's letter of the 19th, and his check of the 14th.

There are three other facts, also undisputed, that seem to us to show conclusively that the stenographer's recollection, after three years, was at fault, viz.: (1) Within five days after the first mailing of the check, defendant told Seeber that his policy was lapsed because the premium had been received too late; (2) within a week thereafter, Seeber filled out the application blank, sent him by defendant, requesting reinstatement, and therein stating that his policy had lapsed; (3) having the matter thus early and clearly brought to his notice, he did not then, or at any time thereafter, make any claim or contention that the check was mailed in time, or that the policy was not properly lapsed.

On the question of payment, the weight of the evidence is so overwhelmingly against the plaintiff, that we are of opinion that there should have been an instructed verdict on that point. Chicago, M. & St. P. Ry. v. Coogan, 271 U. S. 472, 478, 46 S. Ct. 564, 70 L. Ed. 1041.

■ But it is claimed that Seeber's check was subsequently cashed by defendant and that the policy was thereby ratified. The facts are that after defendant received Seeber's check, dated September 14th, defendant, in its letter dated September 19th, sent that check back to Seeber and told him that the check had come to defendant too late, and that his policy had lapsed. He was also sent a blank application for reinstatement of the policy, and was told that there were two requirements for reinstatement, namely, that

he must pay the premium, and show insurability; that he might pay the premium by sending again his September 14th check. His application for reinstatement, received by defendant September 28th, contained the check. October 10th, the application was finally rejected, and Seeber notified on October 16th thereof in writing. He was told that his check had been unintentionally deposited, and that by reason thereof defendant was sending its check for the same amount. Seeber cashed that check and kept the proceeds. The Seeber check was deposited between the date of rejection and the letter of October 16th, notifying Seeber thereof. We are of opinion that the deposit of the check did not work a revival of the policy for the following reasons: First, the surrounding circumstances all show that it was a mere inadvertence and without any intention whatever of thereby reviving the policy; second, defendant had the right to convert the check into cash and carry it in that form, and there could be no inference from that fact alone that it was intended thereby to revive the policy; third, when Seeber cashed defendant's check, he did it with full knowledge that the company had deposited his check; fourth, in his application for reinstatement, Seeber said: "I agree that said policy shall not be revived until this application shall be approved in writing."

■ The policy provided as follows: "After this policy shall have been in force for three years, it shall, upon the nonpayment of a premium when due, be automatically continued in force as non-participating paid-up term insurance. * * *" The policy was before the court. It was not contended that there was any ambiguity or any uncertainty as to any one of the terms of the policy, yet an actuary was called and permitted to construe the policy for the jury. He told the jury how long the policy would automatically have continued in force if the August payment had been made. It was nowhere denied but that, if the August premium had been paid, the policy would have been in effect at the time of Seeber's death. The witness was also permitted to base testimony upon assumptions and suppositions that had no basis in fact and that did not relate to any issue in the case. In one of his supposed cases, he testified that the policy would be automatically extended until May 23, 1926, some three months after Seeber's death. In another supposed case, he showed that the policy would be extended until April 28, 1926. And, again, he testified to condi-

tions under which the extended term insurance would be one year and 18 days from November, 1925. On cross-examination he admitted omission of material elements in some of his computations, such as surrender charges permitted by the policy and permitted by the statutes of Illinois, where the policy was written.

Each count in the declaration based the right of recovery upon the payment of the August, 1925, premium within the grace period. The affidavit supporting the general issue denied that payment, and averred that by reason of failure to make that payment the policy had lapsed and was forfeited. The court, construing the policy, told the jury: "If the premium due August 15, 1925, was not paid when due or within the period of grace, then and in that case * * * the company had the right and power to declare the policy as lapsed and to inform the insured that if he wished to have the policy reinstated he would have to make application therefor." No one objected to that instruction, and it is not contended that that is not a correct construction of the policy, and that, if the August 15th premium was not paid, the policy lapsed. As the issue was upon the question as to whether the August payment had been made, and, as it was not denied that if it had been the extended insurance reached beyond the life of Seeber, it was wholly immaterial whether, under the conditions supposed by the actuary, the insurance would have been carried beyond the time of Seeber's death. There was no such issue. That testimony was calculated to lead the jury to believe that testimony, permitted by the court, was competent to show that the extended term went beyond the date of Seeber's death, even if the August payment had not been made. The construction of the policy was for the court. Most of the actuary's testimony did not tend to support any issue in the case, and it must have been prejudicial to defendant.

Defendant asked an instruction, which, as modified by the court by inserting the words in italics, was given to the jury: "You are instructed that the beneficiary in the policy involved herein had no vested interest in said policy prior to the death of William P. Seeber; that said William P. Seeber had a right to make any agreement he desired with respect to the termination of said policy prior to his death, and if you find from a fair preponderance of the evidence that said Seeber made such an agreement and acquiesced in the action of the company in terminating the policy, *with full knowledge of all of the facts,* such an agreement is binding upon him and upon the plaintiff here." The lapsing of the policy was conceded by Seeber, with full knowledge of all the facts, but the question as to whether there had been a forfeiture or a termination of the policy was never under consideration between the parties. Therefore, we are of opinion that the instruction ought not to have been given at all, but it was given at defendant's request, and we are of opinion that, under the circumstances, it was not injurious.

We are of opinion that a verdict, under the issues in the case, should have been directed for the defendant, and the judgment is reversed and the cause remanded for proceedings in harmony with this opinion.