Mrs. **Juanita H. CRUM, Plaintiff,**

v.

The **PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.**

No. GC 72-51.

United States District Court, N. D. Mississippi, Greenville Division.

March 28, 1973.

James T. Bridges, Irby Turnel, Jr., Belzoni, Miss., for plaintiff.

John E. Hughes, III, Erskine W. Wells, Jackson, Miss., for defendant.

## MEMORANDUM OPINION

KEADY, Chief Judge.

In this diversity action, Mrs. Juanita H. Crum, plaintiff, sues The Prudential Insurance Company of America (Prudential) seeking to recover as beneficiary the sum of $12,840 as the proceeds payable under an insurance policy issued on the life of her husband, Ernest R. Crum, Jr.[1] Prudential denies that the policy was in .force when the insured died on February 22, 1971, and asserts that the policy had lapsed for nonpayment of premium. Each party has responded to requests for admission of facts served by the adversary and Prudential has taken the deposition of two of its employees. Upon the basis of these materials and affidavits, both sides have moved for summary judgment, contending that there is no genuine issue of material fact and each is entitled to judgment as a matter of law.

All essential facts are undisputed. On January 1, 1964, Prudential issued its policy in the initial amount of $20,000 as a 15-year decreasing term contract which called for the payment of a premium of $327 annually on January 1. Crum, then 54 years of age, was an implement dealer who resided at Belzoni, Mississippi. In his insurance applica-

---

[1] The action was begun in the Circuit Court of Humphreys County, Mississippi, and removed to federal district court upon Prudential's timely petition.

tion, the insured requested that the premiums be paid on an annual basis and accrued dividends applied to the reduction of premiums. All premiums up to and including the one due January 1, 1970, were timely paid; and accrued dividends were always used to reduce the premium. In December 1970, the insured received a notice from Prudential reminding him of the premium due and payable on January 1, 1971; this notice disclosed a net premium due of $207.84 after deducting from the fixed annual premium an accrued dividend of $119.16. Both the premium notice and the policy provided that failure to pay the net premium on or before the due date or within a 31-day grace period would forfeit the policy and cause it to be void. The policy in issue, being a purely term policy, had no cash surrender or loan value or extended term provisions.

Crum failed to pay the net premium within the 31-day grace period expiring February 1, but he did forward his check for $207.84 dated February 15, which was received by Prudential at its Southwest Home Office at Houston, Texas, on February 18. The check was accompanied by Part 2 of the premium notice referred to as the "turn around document". When the envelope containing the check and notice was opened, Prudential's acceptance clerk noted that the premium was more than 38 days past due. The significance of this determination arises from the fact that Prudential's data processing equipment was programmed to unconditionally accept all tenders of premiums up to 38 days after the due date, 7 days being allowed for delays in mail delivery. Crum's check was placed in a batch of other checks received on February 18, the batch was given a designation, and the checks placed in the safe. The acceptance clerk placed Part 2 of the premium notice in a Farrington Optical Scanner which read the data onto magnetic tape; and the magnetic tape was then introduced into an IBM computer for processing on Friday, February 19. Meanwhile, Crum's remittance and the envelope in which it was received were passed to a reconciliation clerk to examine the documents to determine if the tender could be accepted.

On Monday, February 22, the next working day after the magnetic tape was introduced into the computer, the computer made a print-out that the remittance was overdue and was not applied as payment of the premium; it automatically generated a letter to the insured advising that the remittance could not be accepted since it was received after the grace period, but that the policy might be reinstated upon the execution of an application to that effect. This letter, with a form of application for reinstatement, was mailed to the insured on February 22, but was never received by him. Crum died suddenly that very day, February 22, while on a trip to New Orleans, Louisiana. Prudential's financial records showed that the net premium remitted by the insured was not credited to pay the premium but placed in a suspense account and held as an unapplied transaction. Nevertheless, the insured's check was on February 22 deposited to Prudential's general account at Capital National Bank of Houston and honored when presented in due course to the drawee bank. While Prudential maintained general accounts at several Houston banks, it had no separate, restricted account for deposit of funds held in suspense, such as premiums received late after expiration of the grace period.

On March 24, Prudential refunded the net premium of $207.84 by first issuing its check to the deceased insured and then issuing a check to the plaintiff in lieu thereof; on the same date Prudential also issued its check for $119.16 to the deceased insured in payment of the accrued dividend. Although received by plaintiff, these checks have not been cashed. When the net premium was received and processed as heretofore stated, the computer set a follow-up for March 15 (the 74th day after premium due date) to initiate the process of returning the tender if a reinstatement

application had not been received. Prudential's custom was to pay accrued dividend within 95 days where an insured failed to pay the net premium due.

The Farrington Optical Scanner and IBM Model 50 computer were efficient, accurate, and standard equipment relied upon by Prudential in the ordinary course of conducting business, and its data processing personnel were qualified and experienced computer operators and programmers. It is admitted that if in force on the date of insured's death, the policy would pay $12,840.

Plaintiff makes two contentions: (1) Prudential's acceptance and deposit of the check in its general bank account waived forfeiture of the policy, especially since the insured's funds representing the net premium due and accrued dividend were retained by the insurer for an unreasonable length of time; and (2) Prudential could not declare a forfeiture of the policy when it had in its hands an accrued dividend sufficient to pay the quarterly premium, and thus applying the dividend, the policy was effective when the insured died. Defendant urges in reply that the remittance was only conditionally accepted under circumstances clearly showing an intention not to waive forfeiture of the policy because of the late-paid premium, and by the insured's election and the policy provisions, Prudential had neither the authority nor duty to change the mode of paying premiums. For reasons that follow, we are of the opinion that Prudential's position is supported by the policy provisions, the applicable law, the undisputed facts, and it is, therefore, entitled to summary judgment in its favor.

It is universally recognized that the unconditional acceptance of a sum tendered in payment of a premium after expiration of the grace period is a waiver of the insurer's right to terminate or forfeit the policy for nonpayment of premium. Yet this rule does not apply to an acceptance expressly made conditional upon the insured's performing some act or satisfying some condition. "Accordingly, there is no waiver where the acceptance and retention are made subject to reinstatement and approval of a changed method of premium payment. Likewise, the acceptance of a check and placing it in a suspense account pending determination of the restoration of the policy does not effect a waiver where such acceptance is clearly conditional." Couch, Cyc. of Insurance Law, 2d Ed., Vol. 6 § 32:360, pp. 580–582. Appleman, Insurance Law and Practice, Vol. 15 § 8501, pp. 351 et seq. Although Mississippi has no factual precedent in point, we are of the opinion that the state Supreme Court would recognize the foregoing principle which is well supported by decisions from various jurisdictions.

The Fifth Circuit, in Dreeben v. Mutual Life Ins. Co., 29 F.2d 963 (5 Cir. 1929), construing New York law, was faced with closely analogous facts. The insurer had issued a term policy, without loan value or extended term provisions, in consideration of the payment of an annual premium which, as extended by mutual agreement, had to be paid by July 1. The insurer on July 2 mailed a check to cover the premium; this check was received July 8 at the insurer's home office. The following day the company advised the insured by letter that his check had not been received within the extension period and could not be accepted without satisfactory evidence of insurability, and that the remittance was being placed in suspense pending reinstatement. The check was deposited by the insurer in a suspense account; on the insured's request the money was refunded to him July 14. Seventeen days later, July 31, the insured died. Rejecting recovery, the Court held (p. 966):

"Appellee [the insurer] did not waive its right to assert that the policy had lapsed by placing the check of the insured in a suspense account for the purpose of determining whether it would approve an application for restoration of the policy. Gould v. Equitable Life Assurance Society, 231 N.Y. 208, 131 N.E. 892. It clearly appears

from the cashier's memorandum that the insured's check was accepted conditionally, and was not to be considered as renewing the policy or creating any liability against appellee."

■ The Seventh Circuit in Security Life Ins. Co. v. Seeber, 41 F.2d 600 (7 Cir. 1930), ruled that an insurer has the right to convert into cash a check tendered late in payment of a premium, and carry it in that form, without waiving forfeiture where the insurer had requested but not acted upon an application for reinstatement at the time of the insured's death. Other cases supporting the right of an insurer to accept the tender of a late-paid premium conditionally without waiving right to claim forfeiture are: Summers v. Jefferson Standard Life Ins. Co., 142 S.W.2d 589 (Tex. Civ.App.1940); Hare v. Illinois Bankers Life Assur. Co., 199 Ark. 27, 132 S.W.2d 824 (1939); Illinois Bankers Life Assur. Co. v. Petray, 195 Ark. 144, 110 S.W.2d 1070 (1937); The Praetorians v. Krusz, 58 S.W.2d 27 (Tex.Com.App. 1933); Rogers v. Columbian National Life Ins. Co., 204 Iowa 804, 213 N.W. 757 (1927); Willis v. New York Life Ins. Co., 281 S.W. 407 (Mo.1926), affirming, Mo.App., 252 S.W. 995 (1923).

■ The uncontroverted facts, contrary to assertions by plaintiff's counsel, show that Prudential's acceptance of Crum's remittance was conditional only and its conduct inconsistent with waiver of policy forfeiture upon expiration of the grace period. The argument that the company customarily accepted premiums 7 days late because of slow mail delivery cannot avail plaintiff when the insured's check was received no less than 17 days late. Crum had no reason to believe that his tender would be accepted

beyond the grace period. Moreover, promptly upon receipt of the tender, Prudential wrote the insured that his payment could not be accepted as it was received after the grace period. This communication, which was explicit and unambiguous, refutes the claim that Prudential either equivocated in or refrained from declaring a lapse of the policy.[2] The conditional nature of the acceptance was also corroborated by the company's carrying the funds on its financial records in suspense pending reinstatement; it was in no way diminished by depositing the remittance in a general, rather than a special or escrow, bank account. The funds having been plainly marked on the insurer's records as belonging to the insured, it would be unduly harsh to ignore or nullify the plainly stated conditions of an acceptance merely because the remittance was not also placed in a restricted bank account, and we know of no court which has adopted such a requirement when it otherwise plainly appears that the payment is retained only for possible reinstatement. As for not immediately returning the check, Prudential, as stated in its communication to the insured, determined to retain the remittance for 21 days pending receipt of reinstatement application and when it was not forthcoming, it without delay refunded the payment. Of course, had the reinstatement been applied for, it was advantageous to both the insured and the insurer to have the payment readily available. We are of the view that retaining a remittance for a limited time, merely to aid in effectuating the declared purpose of reinstatement, was reasonable, and not inconsistent with the insurer's regarding the policy as lapsed.

2. The letter of February 22 to the insured which the computer generated reads as follows:
"Thank you for your recent remittance of $207.84 intended to pay your Jan 01, 1971 premium.
We would like to accept your payment but cannot do so as it was received after the grace period. However, your policy includes a valuable reinstatement provision and we will be pleased to consider reinstating your coverage upon receipt of the enclosed application within 21 days from the date of this letter. During this period, the requirements are still fairly simple, but a delay in applying can mean more strict requirements later on. If we do not hear from you, we must lapse your policy and return, by Prudential check, the amount of your remittance."

■■ While we agree that under the Mississippi decisions slight evidence is sufficient to avoid forfeiture, and forfeitures are not favored in the law, the record is nevertheless entirely devoid of any conduct, or inconsistent behavior, which estops Prudential from claiming a lapse of the policy in issue. Stonewall Life Ins. Co. v. Cooke, 165 Miss. 619, 144 So. 217 (1932), a case strongly relied upon by plaintiff, is clearly distinguishable on its facts. In *Cooke*, the insurer affirmatively recognized the continuance beyond the grace period of the two policies in issue by accepting the tenders without qualification, back-dating the receipt to the due date of the premiums and representing that the policies were still in effect.

■ Mississippi is in accord with the general rule that an insurer may not declare forfeiture for nonpayment of premium when it holds dividends or other funds of the insured in an amount sufficient to pay the premium due, Mutual Life Ins. Co. v. Breland, 117 Miss. 479, 78 So. 362 (1918), nor may forfeiture be declared in any case where the insurer fails to notify an insured of the amount of the dividend available to reduce the premium, Owen v. New York Life Ins. Co., 126 Miss. 878, 89 So. 770 (1921). See Ann. 8 A.L.R.3d, § 2, p. 868 et seq. In the case sub judice it is conceded that timely notice of the premium was given the insured, and the accrued dividend was inadequate to pay the full premium due. At the time the policy was issued, the insured had elected to pay the premium on an annual basis, and always paid it in that manner. The policy provided that "upon written request and subject to the Company's approval" the insured might change the frequency of premium payments to semi-annual, quarterly or monthly intervals by paying the applicable rate. Although the accrued dividend of $119.16 was more than enough to pay two months premium or even the premium for a quarterly period, the insured at no time requested, in writing or otherwise, a change from paying the premium annually, which carried the cheapest rate.

■ The Supreme Court of Mississippi has not been faced with the narrow issue of whether the insurer is obliged to apply dividends under the foregoing circumstances. The prevailing view is that an insurer is under no duty to apply accrued dividends which are insufficient to pay the full premium due by applying them as a partial payment to extend the life of the policy as far as possible, in the absence of an offer by the insured to pay the balance. 43 Am.Jur.2d, § 579, p. 595; Ann. 8 A.L.R.3d, § 4, pp. 878–885. Simmons v. Cambridge Savings Bank, 346 Mass. 327, 191 N.E.2d 681 (1963); Smith v. New York Life Ins. Co., 65 Ga.App. 451, 15 S.E.2d 813 (1941); Reynolds v. Equitable Life Assurance Society, 142 Pa.Super. 65, 15 A.2d 464 (1940); Meilander v. Penn Mutual Life Ins. Co., 59 Ohio App. 171, 17 N.E.2d 398 (1938); Price v. Northwestern Mutual Life Ins. Co., 113 W.Va. 683, 169 S.E. 613 (1933); Terry v. State Mutual Life Ins. Co., 90 S.C. 1, 72 S.E. 498 (1911). The rationale of these cases is that the option to change from an annual to a quarterly, or lesser, basis rests solely with the assured, and upon his failure to exercise such option, it would be a breach of the insurance contract for the insurer unilaterally to change the premium-paying basis and apply the dividend to paying the premium for a lesser but unauthorized period of time. By the majority view, it is impermissible to presume the consent of the insured to such practice, for he would, indeed, have the right to sue the insurer for the dividend thus appropriated without his direction. Plaintiff urges what is conceded the minority rule, as proclaimed by the Arkansas decision of Mutual Life Ins. Co. v. Henley, 125 Ark. 372, 188 S.W. 829 (1916), where the Court stated that although the insured had not elected to pay the premium quarterly, his consent to prevent forfeiture might be presumed where the accrued dividend was ade-

quate to pay the quarterly premium but less than the annual amount prescribed by the policy. We are of the view that the state Supreme Court would follow the majority view which, we think, is supported by better reasoning, comports with established principles of contract law, and avoids palpable judicial revision of a clearly stated agreement. Since the insured failed to exercise the option in his favor, this court may not make the direction, and the insurer had no right or authority to do so. The case presents no special circumstances which can relieve the beneficiary of the consequences of the insured's inaction.

Let judgment be entered for defendant.