CHAIE S. WEINSTEIN ET ALS. *vs.* MUTUAL TRUST LIFE INSURANCE COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 4th—decided May 9th, 1933.

*Aaron J. Palmer,* for the appellants (plaintiffs).

*Lucius F. Robinson, Jr.,* for the appellee (defendant).

MALTBIE, C. J. This action comes before us upon an appeal by the plaintiffs from a judgment entered for the defendant, after a demurrer to the amended complaint had been sustained and the plaintiffs had neglected and refused to plead further. The amended complaint alleged the following facts: On November 13th, 1920, the defendant issued to Ely Weinstein a policy of life insurance payable to the plaintiffs, under which an annual premium of $103.38 was due the defendant. The policy provided that, beginning at the end of the first policy year and annually thereafter, it would be credited with its share of the company's divisible surplus as determined by its directors, such share, at the option of the insured, to be paid in cash or applied on a premium due on the policy, or used to purchase paid up additions to it or left with the company to accumulate to the credit of the policy, and it further provided that if no election was made prior to any anniversary, the dividends would be paid in cash. In 1921, when the second annual premium became due, the insured executed a dividend voucher

acknowledging receipt of a dividend on the policy, applied in part payment of the premium due. In the years 1922 to 1926, inclusive, the premium notice sent the insured stated upon its face as due the full amount of the premium and on the reverse side stated that a dividend of a certain amount was apportioned for the year on account of the policy, to be applied under one of the options given in the provisions of the policy to which we have referred, which were recited, with instructions that the insured was to sign the option selected and return the notice with his remittance; and in each of these years the insured signed the option for the application of the dividend in reduction of the premium, acknowledging receipt of that dividend. In the years 1927 to 1929, inclusive, without any direction or election by the insured, the defendant applied the dividends on the policy in reduction of the premiums and the insured remitted to it the balance of those premiums, which the defendant accepted in full payment of them.

Shortly before November 13th, 1930, the defendant sent the insured a notice that a cash payment would be due "as per statement below," giving the due date, the amount of the annual premium, "less dividend $22.53," and also stating the "amount payable" as $80.85. On the back of the notice was printed the statement: "If the payment mentioned on the reverse side is not made on or before the day it becomes due said policy terminates, except as may be otherwise therein provided, and can be renewed only by consent of the company." On November 28th, 1930, the defendant sent the insured a further notice, giving the policy number, premium due date, and, under the heading "amount," the figures $80.85, with the statement: "To be sure that your policy is kept in force, the premium should be paid on or before Dec. 13,

1930." The policy provided a grace period of thirty-one days, and on December 13th, 1930, the insured mailed to the defendant his check for $80.85, which the defendant received on December 15th, 1930. On that day, it deposited the check and mailed to the insured a premium receipt which provided in part that it would be invalid if any check or draft in exchange for which it was given was not paid on final presentation. On December 17th, the insured died, and when, on that day, the check was presented for payment at the bank on which it was drawn, it was dishonored and returned to the defendant because of his death. The complaint then went on to allege that the action of the defendant in applying the dividend of $22.53 in reduction of the premium due, had the effect of continuing the policy in force during the time the dividend was sufficient to pay the premium.

The policy, a copy of which was annexed to the amended complaint, contained, in addition to the terms to which we have referred, the following provisions: The annual premium was payable on the 13th day of November in each year, but it might, by agreement with the company, be paid in semi-annual instalments of $53.73 each or quarter-annual instalments of $27.39 each. All premiums or instalments of premiums were payable in advance at the home office or when due to an agent of the company upon delivery of a properly signed receipt. Subject to the grace period previously referred to, the payment of a premium or an instalment would not continue the policy in force beyond the date when the next premium or instalment became due and, except as otherwise provided in it, failure to pay any premium or instalment when due, or within the grace period, terminated all obligations of the company under the policy. During

the continuance of the policy, the whole or any part of dividend accumulations might be withdrawn in cash by the insured at any time upon demand, and no premium was to be construed as paid, either wholly or in part, nor any insurance under the policy extended or continued in force, by reason of any dividend accumulations remaining with the company.

Under the provisions of the policy, the share of the divisible surplus of the company credited upon any policy was money belonging to the insured and held subject to disposition by him until such time as it had, under express or implied authority from him, been applied by the company to pay a premium in whole or in part or to purchase paid up additions to the policy, so that it was no longer held for him and subject to such disposition as he might make of it, but had become a part of the funds of the company. The complaint does not directly allege that the dividend credited to the policy here in question in November, 1930, was ever applied to the payment of the premium due at that time. It does allege that the defendant, shortly before November 13th, 1930, sent the insured a premium notice "applying the dividend of $22.53" in reduction of the premium, and that the notice of November 28th, 1930, stated that "the amount due" was the difference between the premium and the dividend; but the statements in these notices would at most be evidence of an application of the dividend toward the payment of the premium and, as they might be explained by other evidence, could hardly amount to a sufficient allegation that it had taken place. It is true that the complaint concludes with an allegation that the action of the defendant in applying the dividend in reduction of the premium had the effect of continuing the policy in force during the time the dividend was sufficient to pay the premium;

but that is clearly a legal conclusion which is to be tested by the facts alleged, and adds nothing to the strength of the pleading. *Coughlin* v. *Knights of Columbus,* 79 Conn. 218, 222, 64 Atl. 223; *Perkins* v. *Coffin,* 84 Conn. 275, 280, 79 Atl. 1070. It is only, however, by construing certain of the grounds of demurrer very broadly, that this defect in the complaint could be held to be within its scope and we do not therefore rest our decision upon this basis.

The policy, while nowhere expressly stating that a partial payment of any premium or instalment would not have the effect of continuing the policy, always refers to the premium or instalment as a single sum. In particular it provides that the "failure to pay any premium or instalment when due, or within the grace period, shall terminate" all obligations of the company under the policy, except as provided in subsequent paragraphs giving the insured certain rights after such a failure. The policy very evidently contemplated that, to keep it alive, it was necessary for the insured to pay the entire amount of any premium or instalment when due, or within the grace period allowed. Any agreement between the insured and the company for continuing the policy upon the payment of a sum less than the annual premium or a semi-annual or quarter-annual instalment, would be outside the terms of the policy and would therefore require an intention upon the part of the insured and insurer, express or implied, that the payment would have such a result. If, for instance, an insured under such a policy as this paid the insurer a part of a premium or instalment in advance of the due date, and the latter credited the amount so paid upon the premium or instalment, this in itself would not continue the policy. *Slocum* v. *New York Life Ins. Co.,* 228 U. S. 364, 374, 33 Sup. Ct. 523; *Terry* v. *State Mutual Life Ins. Co.,* 90 S. C.

1, 72 S. E. 498; *Willcuts* v. *Northwestern Mutual Life Ins. Co.*, 81 Ind. 300, 305; *Clifton* v. *Mutual Life Ins. Co.*, 168 N. C. 499, 500, 84 S. E. 817; 4 Cooley, Briefs on Insurance (2d Ed.) p. 3669. This is but the application of the general principle of contract law that where the parties enter into an indivisible undertaking and one party performs less than the whole for which he is obligated, he cannot insist upon performance by the other, but at most can claim only compensation for the benefit conferred on that other. *Hickock* v. *Hoyt*, 33 Conn. 553; 3 Williston, Contracts, § 1473 *et seq.*

The complaint before us does not allege that there was any agreement for continuing the policy upon the application to the premium of the dividend due in November, 1930. Indeed, the facts alleged thoroughly rebut any such intention in the minds of the parties. In the first place, the provision in the policy for semi-annual instalments calls for the payment in each instance of a sum greater than one half the annual premium, and the provision for quarter-annual instalments calls for the payment in each instance of a sum greater than one half the semi-annual instalment, so that, under the terms of the policy, it would not be possible to determine how long a payment not equalling an annual premium or a semi-annual or quarter-annual instalment would continue it; in this instance, no other arrangement having been made, the insured was paying annual premiums, and upon the payment of an amount less than the amount due for that, to continue the policy for such a portion of the year as the amount so paid might bear to the entire premium would not accord with the provisions of the contract which the parties had made. That the company had no intention of continuing the policy by the application of the dividend to the premium is plain from the state-

ment in the premium notice sent before November 13th, 1930, that if the payment of the difference between the premium and the dividend was not paid on or before the day it became due the policy would terminate, except as otherwise provided in it, and the statement in the notice of November 28th, 1930, that, if the policy was to be kept in force, the premium must be paid on or before December 13th, 1930. It follows, that even if the complaint did sufficiently allege that the company had applied the dividend upon the premium due upon the policy under the express or implied authority of the insured, in such a way that it had ceased to hold the money as that of the insured and subject to his disposition, but had placed it among its own funds, it still would not appear that such an application of it would continue the policy after the expiration of the grace period for the payment of the premium. The effect of the facts alleged would indicate only that the company had taken over the dividend in part payment of the premium, subject to the receipt from the insured of a sufficient sum to complete the payment due from him. The trial court was correct in sustaining the demurrer.

There is no error.

In this opinion the other judges concurred.