We therefore hold that the Court of Common Pleas committed error in rendering judgment against John H. Harris.

Proceeding to enter the judgment, which in our opinion should have been entered, the judgment of the Court of Common Pleas is ordered reversed and final judgment is rendered in favor of the appellant, John H. Harris.

*Judgment reversed.*

TERRELL, J., concurs.
LIEGHLEY, J., dissents.

MEILANDER, APPELLANT, *v.* PENN MUTUAL LIFE INS. CO., APPELLEE.

172

■■■■■■■■■■■■■■■■■■■

(Decided January 17, 1938.)

■■■■■■■■■■■■■■■■■

*Messrs. Doyle & Lewis* and *Mr. Milo J. Warner,* for appellant.

*Messrs. Smith, Beckwith, Ohlinger & Froehlich* and *Mr. George S. Koles,* for appellee.

CARPENTER, J.   In the trial court, the plaintiff, Anna E. Meilander, who is the appellant here, sued the defendant, Penn Mutual Life Insurance Company, appellee, to recover on a policy of insurance issued by it on the life of her husband, Leonard F. Meilander, in which policy she was named as the beneficiary.   On trial to a jury, at the close of all of the evidence, both parties moved for a directed verdict.   Plaintiff's motion was overruled, that of the defendant granted, and judgment was entered for it.   From that judgment plaintiff appealed on questions of law.

The issue decided by the court was strictly a legal one, for there were no disputed facts.   July 18, 1933, the insurance company issued to Leonard F. Meilander a ten-year term life policy for $3,000, the material parts of which are as follows: ·

"This contract is made in consideration of the payment in advance to the company at its home office of the first premium hereunder and upon condition that subsequent premiums are paid when due.   The amounts and due dates of premiums, *unless otherwise requested* as hereinafter provided, are as follows:   Thirty-eight and 04/100 dollars at the date hereof, and thirty-eight and 04/100 dollars on or before the eighteenth day of July in every year for the term of ten full years or until the prior death of the insured; but upon *written*

*request* premiums may be paid at any of the rates stated on the margin of this page and as provided in Section 4. Policy years shall be computed from the eighteenth day of July, 1933.''

On the margin appear the following:

''Annual premium $38.04.''

''Semi-annual premium $19.41.''

''Quarterly premium $9.90.''

Among other provisions, Section 1 provides:

''Annual dividends. This policy will participate in surplus while in force by payment of premiums. Dividends will be determined and accounted for by the company and will be available at the end of the second and of each subsequent policy year.''

''Dividends may be used: (1) In reduction of premium, or (2) To accumulate to the credit of this policy at 3 percent per annum compound interest. * * *''

''If no other option is selected, dividends shall be paid in cash.''

The application is attached to the original policy, and is a part of the insurance contract and specifically provides: ''The surplus is to be used to reduce premiums.''

The policy provides further, in Section 4:

''Payment of premiums. All premiums are due and payable in advance * * * on or before the dates when due * * *.

''The insurance under this policy *is based upon annual premiums payable in advance*; but upon *written request,* payments may be made semi-annually or quarterly in advance at the premium rates stated on the first page of this policy. * * * Upon non-payment of any premium when due or within the period of grace this policy shall lapse and become null and void.''

''Grace in payment of premiums. A grace of thirty-one days will be granted for the payment of premiums or regular instalments thereof, after the first. * * *''

No other provision than as above stated was made for the disposition of annual dividends declared.

The premiums were paid in full on the annual basis to July 18, 1936. At that time there accrued a dividend credit of $11.58 due the insured and he was given timely notice thereof, and of the amount necessary to pay the annual premium then due. On August 22, 1936, the insured died. Due proof of the death was made to the insurer.

At no time did he, in writing or otherwise, request the privilege of paying premiums semi-annually or quarterly, nor did he give the insurer any directions in reference to the disposition to be made of the dividend credit of $11.58 declared on his policy July 18, 1936, except that contained in the application as above quoted.

The insurer, on November 5, 1936, notified the plaintiff that this was a lapsed policy and that it held the dividend of $11.58 to the credit of the insured's estate.

The plaintiff claims that, inasmuch as the dividend of $11.58 exceeded the quarterly premium of $9.90 mentioned on the margin of the policy, the insurer was required to apply the dividend in payment of the quarterly premium and thereby extend the insurance to a date which was beyond the date of the insured's death.

The defendant's claim is that, no request having been made by the insured to change the premium paying from the annual to the quarterly basis, it was without authority to make such application of the dividend, and could only hold it to the credit of the insured until he paid to it the difference between the annual premium of $38.04 and the $11.58, or $26.46, when the dividend credit would be applied to that premium, and, such payment not having been made, and no request to change the premium paying basis having been made, the policy lapsed on August 18, 1936, the expiration of the grace period, and on the insured's death, August

22, 1936, its only obligation was to pay to his estate the amount of the dividend.

To support the plaintiff's claim, she cites the case of *Mutual Life Ins. Co.* v. *Henley,* 125 Ark., 372, 188 S. W., 829, which in many respects is similar to this one, and in some of that court's expressions in its opinion the plaintiff finds comfort, especially when the court says at page 377:

"We think the consent of the assured to the appropriation of the dividend to the payment of the first quarterly installment may be presumed. The assured contracted with the insurance company to pay her a stated sum at her death. She became a member of a mutual insurance company, the duty of whose officers, as we have already seen, is to give just and reasonable protection to the rights of the members."

However, two distinguishing facts do appear in that case. Nowhere is it stated that the policy definitely provides that the change from one basis of paying premiums to another shall be made by "written request." In this respect the method of action of the parties to the contract was not as closely channeled as in this case. Then too, in another respect, the conduct of those parties offered a way by which the sympathetic interest of the court in the immediate beneficiary could be expressed at the expense of the welfare of the more remote other policy holders in that mutual company. After the grace period had expired, the husband of the insured sent his check to the company for the difference between the annual premium then past due and the dividend. The company cashed the check and retained the proceeds, and wrote the insured demanding evidence of her insurability as required in the policy in case of lapse. Before this was furnished, the insured died.

Another court, while expressing its views of the importance of enforcing the strict terms of an insur-

ance contract, found in the course of conduct of the parties to the contract a change or modification which enabled that court to hold the insurance in effect at the death of the insured by its application of a declared dividend as a limited premium payment. *Halliday* v. *Equitable Life Assurance Society*, 54 N. D., 466, 209 N. W., 965, 47 A. L. R., 446.

There the contract provided for premium on an annual basis but they "may be paid, subject to the society's written approval, in semi-annually or quarterly instalments," and, "that dividends are payable in cash, in the absence of election," and the court said about it:

"In the absence of facts or circumstances showing a waiver, express or implied, of that stipulation in the policy the insurer could not be compelled to accept payment of less than the installment due on May 12, which was the full annual premium. The insured had the privilege of paying premiums quarterly, semi-annually, or annually; he had elected to pay the premium annually and contracted accordingly. Until that stipulation was abandoned or waived, either expressly by agreement or impliedly by custom or the course of conduct of the defendant, it was incumbent upon the insured to pay the premium in full when due."

In that case during the first three years of the insurance period, the insured had on each anniversary of the policy, signed an express direction to the company to apply the annual dividend to the payment of the annual premium and had accompanied such direction with a check for the balance of the premium. During the last three years before the death of the insured, he had merely sent the check for the difference, and, without express direction, the company had applied the dividend. This conduct, the court said, indicated a modification of the contract and a continuing desire on the part of the insured to have his dividends

so applied, and the company was bound to make the application.

We have searched this record in vain to find some way by "course of conduct" or otherwise, by which the beneficiary, the plaintiff, can escape from the specific requirements of the policy with reference to a "written request" from the insured to change the premium paying basis from the annual to the quarterly plan, so the insurer could apply the accrued dividend on the premium. She urges that the fact the insured's application expressly provided that dividends should be "used to reduce premiums" does that. But that stipulation does not change the premium paying plan, nor does it indicate the particular kind of premium on which the dividend shall be applied. All it means is that when a premium is payable, the dividend shall be applied upon it, provided it will pay the premium then due, or when the balance is paid by the insured. The option to change from the annual to the quarterly basis rested solely with the insured, and this he never exercised. For the insurer to have changed the premium paying basis and so applied the dividend would have been a breach of the contract. For the trial court or this court to do so now would amount to writing a new contract.

This was the conclusion reached in the recent and well-considered case of *Price* v. *Northwestern Mutual Life Ins. Co.,* 113 W. Va., 683, 169 S. E., 613, where the facts were almost identical with those in this case. That court said: "The contract is determinative of the reciprocal rights of the parties, and this court will not alter the plain terms thereof in order to prevent a forfeiture."

Both reason and authority require the affirmation of the judgment below.

*Judgment affirmed.*

LLOYD and OVERMYER, JJ., concur.