## DIAS v. FARM BUREAU MUT. FIRE INS. CO. OF COLUMBUS, OHIO.

### No. 5468.

Circuit Court of Appeals, Fourth Circuit.

May 23, 1946.

Carl C. Sanders, of Beckley, W. Va. (David D. Ashworth and Ashworth & Sanders, all of Beckley, W. Va., on the brief), for appellant.

Douglas Bowers (L. L. Scherer and Scherer, Bowers & File, all of Beckley, W. Va., on the brief), for appellee.

Before GRONER, Chief Justice, United States Court of Appeals for the District of Columbia, and SOPER and DOBIE, Circuit Judges.

GRONER, C. J.

Appellant, who was plaintiff below, brought this action against appellee, an insurance company, in a West Virginia State Court. The case was removed to the United States District Court for the Southern District of West Virginia, and after trial judgment went for defendant. A brief statement of the facts follows:

Appellant conducts a florist business in the town of Beckley, West Virginia. On March 28, 1944, her shop and equipment were destroyed by fire. A policy of fire insurance had been issued to her by appellee for one year from the 1st day of March, 1943. The policy contained the following provision: "This policy may be cancelled at any time by the Company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

In the latter part of January, 1944, appellee mailed to appellant a renewal policy for one year from the expiration date of the original policy. With the policy went a notice to appellant informing her that the amount of the premium was $45.60, less amount in hand of $9.12, representing a dividend declared by appellee on appellant's policy for the previous year, leaving the amount of $36.48 due and payable before

March 1 to effect renewal of the policy for the new term. Appellant in due course received the renewal policy, but did not then or at any time prior to March 1 pay or tender the premium. Accordingly, on March 8, 1944, appellee mailed to appellant a letter of cancellation, advising her that effective at noon, Standard time, on the 5th day after receipt of the letter, the policy would be cancelled, unless payment of the premium was received within that time. Admittedly, appellant gave no attention to the notice, and the policy was cancelled March 15, and the record of the cancellation completed on appellee's books March 23. The evidence in relation to the mailing of the cancellation notice consisted, in the main, of two sheets of an official form provided by the United States Post Office. The form recited that the Post Office at point of mailing—in this case Columbus, Ohio—had "Received from Farm Bureau Mutual Fire Insurance Company the following described non-payment cancellations, March 8, 1944." Under this followed a list of names and addresses, including appellant's. On the face of the first page there were pasted properly cancelled postage stamps of the value of thirty-five cents to cover the official charge of one penny for each of the thirty-five letters then received for mailing as shown on the list. The witness who produced the sheets testified they were a part of the Company's records under his supervision and control, and that the method adopted in this instance was the regular and customary routine of receiving from the Post Office and retaining the evidence of delivery to the Post Office of cancellation notices properly addressed and stamped. There was also evidence for appellee that after cancellation it had mailed the dividend check of $9.12 (March 24) to appellant.

At the close of all the testimony the District Court submitted four questions to the jury—

1. "Was the notice of cancellation mailed to Josephine Dias (appellant) on March 8, 1944?"

2. "If your answer is yes to question No. 1, did Josephine Dias receive the notice of cancellation?"

3. "Was the draft for dividend of $9.12 mailed to Josephine Dias on March 24, 1944?"

4. "If your answer to question No. 3 is yes, did Josephine Dias receive the dividend draft?"

The jury answered yes to the first two questions, no to the third, and, accordingly, returned no answer to the fourth.

The District Court thereupon concluded, on the basis of the jury's finding, that the cancellation of the policy was in accordance with the provision for notice, after default, and was otherwise valid and entered judgment for the Insurance Company.

On this appeal a number of alleged errors were argued, and have had our careful consideration, but, with the exception of two to be presently noticed, we think it unnecessary to discuss them, except to say that we find them without merit.

*First.* Appellant insists that the two post office sheets containing the names and addresses of policy holders in default and to whom notices of cancellation were sent were improperly admitted in evidence.

We think this contention unsound. As we have shown, the papers offered in evidence containing the lists were a part, and a vital part, of the Insurance Company's records. They were compiled for the express purpose of showing that cancellation notices had been duly mailed on a particular date to defaulting policy holders, and the delivery of the list to and its certification by the postal authorities were for the purpose of establishing proof of the fact of mailing. All of this was in the regular course of the Company's business. These facts, we think, bring these records well within the Federal shop book rule.[1] The

---

[1] Act of June 20, 1936, ch. 640, § 1, 49 Stat. 1561, 28 U.S.C.A. § 695. "Admissibility. In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of said act, transaction, occurrence, or event, if it shall appear that it was made in the regular course of any business, and that it was

weight to be given the papers as evidence was, of course, a question for the jury, and the record here shows that the court in submitting questions 1 and 2 to the jury charged them to disregard the papers if they believed the testimony of appellant that she did not receive the cancellation letter. The finding of the jury that she did receive the notice foreclosed all further question in that respect.

*Second.* Appellant, however, now insists that whether appellee gave due notice and thereafter cancelled the policy is of no consequence, since, as she contends, appellee was bound as a matter of law to apply the accrued "dividend" or excess premium to the payment of the renewal premium, which if done would have carried the policy over the period of the fire. The District Court rejected this contention and, we think, properly. The policy was for the entire year. There was no provision for a grace period or for a smaller payment than a full year's premium, nor was there any provision requiring the Company to apply an accrued dividend pro rata to the purchase of insurance, unless at the same time it received payment of the balance of the premium. The contract between the parties contemplated the entire payment

the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term 'business' shall include business, profession, occupation, and calling of every kind."

[2] Mutual Life Ins. Co. of New York v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398.

and, failing that, the right to cancellation under its terms. This is the established law in West Virginia. See Price v. Northwestern Mutual Life Ins. Co., 113 W.Va. 683, 169 S.E. 613, and this being a case in which delivery of the policy was made in West Virginia, the laws of that State control.[2] In the Price case the Supreme Court of West Virginia said: "The principle seems to be very generally recognized that, where the debt due the insured is insufficient to pay a premium, the company is not bound to apply it to the premium, in the absence of an offer on the part of the insured to pay the balance." And this is also the rule adopted and applied in a great majority of the States in which the question has arisen.[3]

In this view it follows, as the trial judge held, that it is of no consequence whether the check for the dividend was or was not received by appellant coincidentally with the cancellation notice. The amount of the dividend belonged to her and until she by some act, such as tender of the balance, indicated that she had transferred it to the insurer, it remained her property, subject to her demand. Price v. Northwestern Mutual Life Ins. Co., supra.

Affirmed.

[3] Meilander v. Penn. Mut. Life Ins. Co., 59 Ohio App. 171, 17 N.E.2d 398; Halliday v. Equitable Life Assur. Soc., 54 N. D. 466, 209 N.W. 965, 47 A.L.R. 446; Weinstein v. Mut. Trust Life Ins. Co., 116 Conn. 654, 166 A. 63, 92 A.L.R. 708; Eastman, Inc. v. Northwest Mut. Life Ins. Co., 169 Wash. 125, 13 P.2d 488; Cason v. Mut. Life Ins. Co. of New York, 67 Colo. 199, 184 P. 296, 6 A.L.R. 1395; Neighbors v. Union Central Life Ins. Co., 17 Tenn.App. 612, 69 S.W.2d 618.