**NEW YORK LIFE INSURANCE COMPANY, a Corporation,**

v.

**William Marshall WALLS, Nelda N. Walls, and Mary Boyd, Defendants.**

**No. 237–E.**

United States District Court, N. D. West Virginia, Elkins Division.

Sept. 8, 1954.

———◆———

James M. Guiher, Clarksburg, W. Va., for plaintiff.

Milford L. Gibson, Kingwood, W. Va., for defendant Wm. Marshall Walls.

John F. Brown, Jr., H. K. Higginbotham, Elkins, W. Va., for defendant Nelda N. Walls.

WATKINS, Chief Judge.

This is an interpleader action under 28 U.S.C.A. § 1335 to determine which of the defendants is entitled to the proceeds of a $5,000 policy of insurance upon the life of Marshall C. Walls, who died at or near Evansville, W. Va., on June 13, 1952.

Nelda N. Walls, widow of the insured, was originally designated as beneficiary. By notice dated May 17, 1952, the insured requested plaintiff to change the beneficiary to Mary Boyd. Subsequently the insured designated his son, William Marshall Walls, as beneficiary. In her original answer, the widow, Nelda N. Walls, asserted claim to the insurance proceeds on the ground of mental incompetency of the deceased to execute the changes of beneficiary. By amended answer she claimed an equitable lien on the insurance proceeds arising from premium payments allegedly made by her pursuant to an understanding with her husband. At the trial she abandoned her position relating to the mental condition of the insured and relied only upon her claim to an equitable lien. The son has challenged the existence of the equitable lien. The defendant Mary Boyd has disclaimed any interest in the insurance proceeds. The case was submitted to the court for decision upon oral testimony and briefs. My findings of fact and conclusions of law are as follows:

Marshall C. Walls and Nelda N. Walls were married February 8, 1941. On September 25, 1941, he took out a $5,000 life insurance policy naming his wife as beneficiary. The premiums were $90.25 payable semi-annually. He paid the first premium on September 25, 1941, and the second premium which was due March 25, 1942. When the third premium came due on September 25, 1942, the insured became disgusted with the amount of the premiums and told his wife that the policy belonged to her; that it was not going to do him any good after he was dead, and if she cared to continue it, it would be up to her to worry about it. At that time she knew she was the beneficiary of the policy, and it was her understanding that if she continued to pay the premiums that she would obtain the proceeds of the policy upon the death of the insured, if she survived him. The insured made similar statements to Blanche Foltz, a neighbor, who had loaned the wife money to make premium payments. The wife is also corroborated by Allen J. Pegg, another neighbor and friend of the insured, who stated that the insured had told him "quite a few times" that his wife would have to meet the premiums if she wanted the insurance. She paid the premium due on September 25, 1942, and also paid each and every premium thereafter until her husband's death. She did not know of the changes in beneficiary. All payments were made from her own earnings. She was a waitress and worked almost continuously from May, 1942, following their marriage in February, 1941, until after his death. During this period her average earnings were $180 to over $200 per month. For a while she also worked as a truck driver for a dairy company. The insured was also employed as a truck driver. Thomas A. Barrett, the insurance agent, testified that she had always made the semi-annual premium payments. The insurance policy was kept at home in the cedar chest where she had access to it at all times. At the time of his death the insured had partially severed his marital life with his wife for the company of his children by another marriage. He had taken up residence with his sons a little over a month before his death, and took

with him, along with a few other possessions, the insurance policy in question.

■ The above facts disclose the existence of an understanding or agreement between the insured and his wife to the effect that if she paid the premiums, the proceeds of the policy would go to her. The fact that informal language was used by the parties to effectuate the agreement does not destroy its existence or effect. Pursuant to that understanding, the wife faithfully paid all the insurance premiums, at times even with borrowed money, which she repaid out of her earnings as a waitress and driver of a milk truck. This subsequent conduct on her part corroborates the existence of such agreement, and explains her action in considering herself both the owner and beneficiary of the policy at her husband's death. She paid the premiums in good faith under the belief that she was the beneficiary, and paid the premiums to keep the policy alive. Had she not paid the premiums the policy would have lapsed.

■ At the time of the execution of the insurance contract, the insured and his wife were domiciled in Pennsylvania, the policy was sold there, and the first premium was paid in Pennsylvania. The record does not show the place of delivery of the policy but it may be inferred that this event also occurred in Pennsylvania. The law of that state must therefore control. New York Life Ins. Co. v. Bonasso, 121 W.Va. 143, 2 S.E.2d 260, 121 A.L.R. 1433; Dias v. Farm Bureau Mutual Fire Ins. Co., 4 Cir., 155 F.2d 788.

■ The general rule is stated in 46 C.J.S., Insurance, § 1180, p. 89, as follows:

"A third person who pays the premiums on a policy is not entitled to reimbursement as against the person entitled to the proceeds, unless he makes such payments under an agreement with the insured or the beneficial owner of the policy, or unless he pays the premiums in good faith, under the belief that he is the beneficiary or has an insurable interest, or to keep the policy alive. * * *

"Where, however, the payments of premiums are of an involuntary nature, as where they are made on the express or implied requests of, or in compliance with an agreement with, insured or beneficial owner of the policy, the amount so paid or advanced, with legal interest thereon, constitutes an equitable lien on the proceeds for the reimbursement of the person making the payments."

To the same effect see Young v. Hipple, 273 Pa. 439, 117 A. 185, 25 A.L.R. 1541; 88 A.L.R. 242, 243; O'Brien v. Grand Lodge, A.O.U.W. of Mass., 1916, 223 Mass. 237, 111 N.E. 955; Kritline v. Odd Fellows' Beneficial Ass'n, 7 Ohio N.P. 439, 5 Ohio Dec., N.P., 592; 29 Am. Jur. Insurance, sec. 1298. See also 46 C. J.S., Insurance, § 1177, p. 86, where it is stated:

"Money advanced by a wife to pay premiums on policy on husband's life should be repaid with interest from date of each payment, out of proceeds of the policy, even though wife was divorced and husband had changed beneficiary." Metropolitan Life Ins. Co. v. Haack, D.C.W. D.La., 50 F.Supp. 55. Metropolitan Life Ins. Co. v. Tesauro, 94 N.J. Eq. 637, 120 A. 918.

See annotation upon this subject in 88 A.L.R. 239, wherein numerous cases are set forth recognizing the principle of the preceding decisions. The recent case of Modern Woodmen of America v. Brennan, D.C.R.I., 111 F.Supp. 735, presented a similar factual situation, and the court held that the sister of the insured who had paid insurance premiums was entitled to an equitable lien upon the proceeds of the policy for all premiums paid. See also Kansas City Life Ins. Co. v. Jones, D.C.S.D.Cal., 21 F.Supp. 159, where the court held that a lien upon the proceeds of a life insurance policy was created where a third party paid up and continued the premium payments with the understanding that the policy was hers until the advanced money had been repaid.

The statements of Nelda N. Walls concerning transactions with the insured were objected to by the defendant William Marshall Walls. Such testimony is admissible, this being a contest between the wife and son, neither of whom represented an interest of the deceased in the fund. The insurance proceeds constituted no part of the deceased's estate. There is no contest between the wife and the legal representative of the deceased. The estate had no interest in the fund and, therefore, the testimony of either interested party would be competent. See Gritz v. Gritz, 336 Pa. 161, 7 A.2d 1, 122 A.L.R. 1297, and cases there cited. See also 122 A.L.R. 1300.

The defendant made payments of premiums in the total amount of $1714.75 as they became due. She is entitled to an equitable lien on the proceeds of the policy in the amount of $1714.75, with interest thereon at the rate of six per cent per annum from March 25, 1947, the average payment date, until paid, with costs. The defendant William Marshall Walls is entitled to the balance of the proceeds after payment of costs. An order may be entered accordingly.