## Northern District

### No. 5572

**GENEVA C. SIMMONS**

**v.**

**CAMBRIDGE SAVINGS BANK**

(May 2, 1962)

Additional opinion by *Brooks, P. J.*

*Present:* Brooks, P. J., Eno & Connolly, JJ.

Case tried to *Parker, J.* in the Third District Court of Eastern Middlesex. No. 1685 of 1960.

*Connolly, J.* This is an action of contract in which the plaintiff seeks to recover, as

beneficiary of a Massachusetts Savings Bank Life Insurance Policy No. F-7806, its face amount in the sum of $1000. The policy is of a type known as a Five Year Term. It was renewable and was originally issued by the defendant, hereinafter referred to as the insurer, on May 8, 1941 on the life of Fred Albert Simmons, Jr. hereinafter referred to as the insured. It provided for premiums to be paid on an annual basis, but also provided that in lieu of annual payments, payments could be made in semi-annual or quarterly installments in accordance with rates set forth in the policy.

It was renewed several times and is alleged by the insurer to have lapsed on or about June 13, 1958 and prior to the death of the insured which occurred on June 19, 1958. The lapse is alleged to have come about because of the failure of the insured to pay the annual premium when due, May 12, 1958 or within the grace period of 31 days immediately following said date. Written notice of the premium due on the anniversary, May 12, 1958, as reduced by dividend credit, was mailed to the insured on or about April 18, 1958. On the date the annual premium was due, May 12, 1958, the insurer had in its hands a dividend in the amount of $6.36 due under the policy which, while not large enough to pay the annual premium of $16.63, was large enough to pay a quarterly installment of the premium in the amount of $4.32. The plaintiff contends that the insurer should

have applied this dividend to the payment of a quarterly installment of the premium and so kept the policy in force at the time of insured's death.

The issue is whether the insurer was obligated to so apply the dividend.

The policy in question was one of ten such policies applied for by the insured in 1941 and issued by ten different Massachusetts Savings Banks. Separate actions have been brought under each of the policies and the parties have agreed that the final judgment in this action shall be accepted as the final judgment in all ten actions.

The case was submitted to the District Court on an agreed stipulation as to the facts together with the exhibits referred to in the stipulation. Although the stipulation at the outset states that "The defendant's answers to plaintiff's interrogatories are true and correct and may be so accepted by the Court," those answers and interrogatories are not included in the report. This omission was intentional as the report in the last paragraph of page seven states "Defendant's answers to plaintiff's interrogatories and the letter of June 20, 1958 to the insured, the only other evidence in the case, do not contain anything of relevance which is not already set forth in substance above."

The submission of the case on an agreed stipulation as to facts amounted to a case stated. To get the case to the Appellate Division, it was in order that the defendant file a request along the line of its request

No. 6 which reads, "The plaintiff is not entitled to recover," and which was denied in the District Court.

But because the case is here on a case stated, further requests were unnecessary and need not be considered, for the only question before the Appellate Division is whether the decision of the District Court in finding for the plaintiff was right on the facts stated and the proper inferences therefrom. G. L. c. 231, §126; *Rock v. Pittsfield*, 316 Mass. 348; *Yates v. Salem*, 342 Mass. 460.

This is a case of first impression in Massachusetts but the broad issue, apart from the interpretation of our statutes applicable to Life Insurance and Savings Bank Life Insurance, has been the subject of considerable litigation in other states. On the contract itself, apart from statutory consideration, it would appear that the prevailing rule is that the plaintiff cannot recover. 14 *B.U. Law Rev.* 352.

And with some reluctance because the decision seems harsh under the circumstances, this Division is of the opinion that the plaintiff cannot recover.

Considering first the contract apart from statutory considerations, it must be conceded that its terms are clear and unambiguous. At its inception, the insured elected to pay the premiums on an annual basis and this election was never changed. The insured had a right to make such a change under that clause on the first page of the policy which reads

"PAYMENT of PREMIUMS. — In lieu of annual premiums as specified above, premiums may be paid in semi-annual or quarterly installments as shown on the second page hereof." But it is contended that the right to make the change in premium payments was the right of the insured and not the right of the insurer and that the insured never exercised that right.

The insured selected option 2 under item 14 in his application for insurance and the application, of course, is a part of the contract. This option expressed his wish that the dividends due under the policy be "used to reduce premium due on anniversary." It did not change the premium paying plan but on the contrary affirmed his election to pay the premium annually and clearly indicated the particular kind of premium (an anniversary or annual one) which the dividend was to be used to reduce. For the insurer to have changed the premium paying basis and so applied the dividend would have been a breach of contract. For a Court to do so would amount to writing a new contract. *Meilander v. Penn Mut. L. Ins. Co.,* 59 Ohio App. 171; *Reynolds v. Equitable L. Ins. Co.,* 142 Pa. Super Ct. 65; *Gardner v. National L. Ins. Co.,* 201 N.C. 716; *Weinstein v. Mutual Tr. L. Ins. Co.,* 116 Conn. 654.

Consideration has been given to item 11 of the application wherein the insured stated that he wished the "Automatic Premium Loan Provision to be effective."

Since this type of policy (Term) has no cash surrender or loan value, the item in question could not apply. The only effect that could be ascribed to it would be that if by some circumstance the policy did acquire a loan value, the insured wished to take advantage of the provision.

The plaintiff argues that the clause entitled "Dividends" on the second page of the policy contains a sentence which supports her contention. The clause describes three plans, one of which the insured might elect as to the application of dividends. (The insured elected the second plan in the application; i. e. to use dividends to reduce premium due on anniversary). The entire paragraph reads as follows with the sentence in question underlined:

"DIVIDENDS.—This policy shares in the profits of the Insurance Department of the Bank, to be determined and apportioned by the Bank in the form of dividends at the end of each policy year while this policy is in force. Payment of such dividends shall not be contingent upon the payment of any subsequent premiums. The dividends shall be payable in accordance with one of the following plans, at the election of the Insured:

First. Paid in cash.

Second. Applied in the reduction of premiums then due hereon.

Third. Left with the Insurance Department of the Bank to accumulate to the credit of the policy with interest at a rate not less than two per cent. per annum, subject to withdrawal on

demand. *This policy shall not be lapsed for the non-payment of any premium if the then accumulated dividends are sufficient to pay such premium, or any regular installment thereof.*"

Read in its entirety, it appears to be an additional reason for denying the obligation or even the right of the insurer to use the dividend in question to pay a quarterly installment of the premium due. Unquestionably, it was written in the policy to apply to the third plan. By implication then, it does not apply to the plan the insured elected, the second plan. It did provide for a plan which would have prevented a lapse such as occurred if the insured had elected it. Unfortunately for his beneficiary, he chose another plan which did not provide for such an application of dividends.

And again, attention is directed to the explicit and unequivical direction of the insured in his application that the dividends were to be used to reduce the premium due on the anniversary. In *Pearson v. Mass. Mut. L. Ins. Co.,* 272 N. Y. Supp. 117, although not exactly in point because it did not involve a Massachusetts Savings Bank Life Insurance Policy or Massachusetts statutes applicable to the same, the Court arrived at the same conclusion as to the use of accumulated dividends although it is conceded, as plaintiff points out, that in writing that decision the court wrongfully assumed that all life insurance policies are written on an annual premium payment basis.

■ On the contract alone then, the insured having elected to pay his premium on an annual basis and not having changed that election, suffered his policy to lapse by not paying the premium when due or at least before the grace period elapsed. And the fact that the insurer at the time of the lapse had in its possession a dividend due the insured in an amount sufficient to pay a quarterly installment of the premium did not keep the policy in force for the period of that quarterly installment, for the insured did not have the right under the policy to apply the dividend to a premium other than an anniversary or annual one. *Price v. Northwestern Mutual Life Ins. Co.,* 113 W. Va. 683.

Those cases which express the minority view and sustain the plaintiff on this issue seem to be based more on humane than legal principles. They assert as authority for their position the concept that one who has funds in his hands belonging to another which may be used, if at all, is duty bound as a fundamental principle of justice to use such funds for the benefit and not the injury of the owner. The consent to one and the dissent to the other would be presumed. *Solomon v. Equitable Life,* 202 La. 1001; *Mutual Life Co. v. Henley,* 125 Ark. 372.

The trouble with applying this concept to this issue, equitable and sound though it may be, is that the courts are second-guessing. The action that these courts and the plaintiff in this case urge, in retrospect, is most appealing

in view of the death of the insured a few days after the lapse of his policy. If the decision to apply the dividend was to be made when this fact was known, the presumption of consent would certainly apply.

But the action taken must be judged as of the date of the anniversary and during the grace period that followed when the insured was living and, as far as the insurer knew, in good health. Must the insurer be then charged with the responsibility of determining what use of the dividend would be of benefit or injury to the insured?

More important, the expression of the concept in these cases ignores its limitation, that there can be no choice as to the use of the money when the holder is under a contractual obligation to use it in a certain way. *Gardner v. National L. Company,* 201 NC 716.

In this case, the insurer was under a contractual obligation to use the dividend as it did.

The fact that the insurer sent a check for the dividend in question to the insured which was negotiated by the insured's estate is not of significance. The action of the personal representative of the insured's estate in these circumstances could not defeat the right of the beneficiary to recover if she otherwise had such a right.

Turning to the Massachusetts statutes relating to Life Insurance G. L. c. 175 and Savings Bank Life Insurance G. L. c. 178, no section can be found which aids the plain-

tiff on the facts in this case. The trouble with trying to fit it into the terms of §11 of G. L. c. 178, which is the section on which the plaintiff relies and which deals with non-forfeiture, is that the policy in question had no value net or otherwise. As a term policy, it had no cash surrender value and the phrase "Dividend Additions" as used in the section does not mean dividends. It does mean paid-up insurance in addition to the face of the policy and purchased with dividends. *Williams v. Union Central L. Ins. Co.*, 291 US 170.

§21 of G. L. c. 178 provides for distribution of dividends to Savings Bank Life Insurance policy holders and states such distribution shall be in accordance with §140 of Chapter 175. But §140 of Chapter 175 expressly prohibits the use of dividends of a term life policy to purchase paid-up additions. And the fact that a dividend was due the policy holder under the policy does not give the policy itself any value. Consequently, since the policy in question had no net value, it could not be used to purchase paid-up term insurance as the plaintiff contends.

Since the plaintiff cannot recover either under the terms of the policy or the applicable statutes, the denial of defendant's request No. 6 was prejudicial error.

The finding for the plaintiff is to be vacated and a new finding is to be entered for the defendant.

*Opinion by Brooks, P. J.* This is neither a dissenting nor an unqualified supporting opinion. Having read with care the able opinion of Judge Connolly on behalf of himself and Judge Eno I feel impelled to express a view of the case from a slightly different angle.

While there is no case directly in point in Massachusetts there seems to be little question but that the weight of opinion elsewhere in the United States in cases similar or analogous favors the defendant. The basic reason for this position, however, does not satisfy me.

It is true that the assured has entered into a contract with the insurer, one part of which provides that premiums are to be paid on an annual basis. The assured selected this method of payment in preference to payments in semi-annual or quarterly installments. As a result of this election the assured's beneficiary, plaintiff in this case, loses the benefit of the policy. Had the assured elected to pay in quarterly installments the quarterly dividend would have been sufficient to prevent forfeiture. The prevailing position seems to be that because the assured originally made his election of annual premium payments the insurer is legally prevented from making a post mortem election in the assured's favor because this would be a breach of contract by the insurer.

In his survey of the law, Judge Connolly cites two cases which go counter to the weight of opinion. Both cases pose substantially the

same problem as this case. In deciding in favor of the assured the Court in *Mutual Life Insurance Company v. Henley*, 202 La. 1001 after noting that insurance contracts are generally to be construed against the insurer, says, "One who has funds in his hands belonging to another which may be used, if at all, is duty bound as a fundamental principal of justice to use such funds for the benefit and not the injury of the owner. The consent to one and dissent to the other would be presumed."

In *Salamon v. Equitable L. Assurance Society*, 125 Ark. 372 the Court said,

"The assured contracted with the insurance company to pay her a stated sum at her death. She became a member of a Mutual Insurance Company, the duty of whose officers is to give just and reasonable protection to the rights of the members. Hence, it is not to be supposed that a member and policy holder would object to the company applying the dividend in its hands to the payment of the quarterly installment of his premium and thereby forfeit his policy and thus defeat the end sought to be accomplished by him in making the contract of insurance."

I suspect that the Courts in these two cases had in mind some of the events in insurance history which have radically changed the position of the policy holder vis-a-vis the Insurance Company, to his advantage. Among these events were the exposures by the late Charles Evans Hughes of undesirable prac-

tices of certain insurance companies at the beginning of this century.

Another episode in the insurance history was the long and successful fight of Louis D. Brandeis for Savings Bank Life Insurance, which enabled policy holders to acquire insurance at greatly reduced rates. Incidentally, the insurance policies in the cases involved in the issue before us are Massachusetts Savings Bank Life Insurance Policies. Steadily, either by statutory enactment or by voluntary action on the part of insurance companies, the position of the assured has greatly improved over the years.

It seems to me that a fairly good argument can be made in support of the theory of the Arkansas and Louisiana Courts that it can be presumed that the assured would be satisfied with the post mortem alteration of the contract which is greatly to his advantage. In the ordinary sense while there is an alteration of the contract there is no breach which implies injury to anyone and that to hold the policy forfeited on the ground of breach is unduly legalistic, rather specious and quite unjust.

Judge Connolly's opinion refers to an interesting survey of the law in 14 B.U. Law Review, page 352. The article frankly recognizes the weight of opinion outside of Massachusetts. It's initial paragraph begins, "It seems to be a generally accepted rule of law that a Life Insurance Company cannot declare a policy forfeited or lapsed for non-

payment of a premium when the company has in its hands funds belonging to the policy holder sufficient to pay the premium." This presumably refers to payment of the whole premium.

The article ends as follows: "In conclusion, I think we can expect the general ruling law stated at the beginning of this paper to be followed by most of our Courts, by some more closely than others. *I believe, however, that our more enlightened Courts will not attempt to apply the rule to cases where the dividend is not sufficient to pay the premium on the basis agreed upon between the company and the insured, though the dividend may be sufficient to pay a premium on a different basis."*

I endorse the above sentiment.