Reynolds, Appellant, *v.* Equitable Life Assurance Society of United States.

Argued May 7, 1940.

Be-fore Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

Assumpsit. Before McKenrick, J.

*Russell R. Yost,* of *Graham, Yost & Meyers,* for appellant.

*Seward H. French, Jr.,* with him *Henry Eastman Hackney, Reed, Smith, Shaw & McClay, Karl W. Warmcastle,* and *F. J. Hartman,* for appellee.

OPINION BY PARKER, J., October 4, 1940:

This is an action in assumpsit brought by Carrie Reynolds to recover a balance claimed to be due her as beneficiary under a policy of insurance on the life of her husband, Thomas E. Reynolds, for $5,000, issued by the Equitable Life Assurance Society and dated March 27, 1902. The assured died May 20, 1934. The plaintiff claimed the face of the policy less an existing policy loan, or a net amount of $2,210.55, with interest. The defendant answered that the policy lapsed on account of a failure to pay the annual premium due on March 25, 1934, except as to paid-up insurance due under the terms of the policy, or $398. A jury rendered a verdict for plaintiff in the amount of her claim and the court below, we think properly, entered judgment n. o. v. for plaintiff for the amount admitted by the defendant to be due her. She has appealed, claiming that judgment should have been entered for the amount of the verdict.

It is conceded that the policy was in full force and effect prior to March 25, 1934, for the face of the policy less the amount of a policy loan. On that date the assured became entitled to receive a dividend of $75.45 and

the policy required the payment of an annual premium of $149.50. The policy by its terms provided: "Dividends, at the option of the Assured ...... shall in each year, on the anniversary of the register date hereof, be either—(1) Paid in cash; or, (2) Applied toward the payment of any premium or premiums; or, (3) Applied to the purchase of Paid-up Additional insurance; or, (4) Left to accumulate at 3% compounded annually, and payable at the maturity of this Contract, but withdrawable at any anniversary of its register date. Unless the Assured ...... shall elect one of the foregoing options within three months after the mailing by the Society of a written notice requiring such election, the dividends shall be applied to the purchase of paid-up Additional Insurance."

On March 25, 1924, Reynolds elected in writing to apply the dividend then due him toward the payment of the annual premium and paid the balance thereof in cash. He followed the same course in 1925. From 1926 to 1933, inclusive, he paid to the company the amount of the annual premium less the dividend and the company, without a written request, treated this as an election to so apply the dividends. On March 25, 1934, he made no election and made no cash payment. If this were all, plaintiff practically concedes that she would not be entitled to a larger judgment.

The policy also contained this provision: "This contract is based upon the receipt of premiums annually in advance, but premiums may be made payable in semi-annual or quarterly instalments in advance, in which case any instalments necessary to complete the full year's premium shall be deducted from the amount of the claim."

When premiums are made payable quarterly or semi-annually they are increased by the amount of an allowance for interest and extra expenses of accounting, so that the quarterly rate is slightly higher than one-

fourth of the annual rate, but this is not of importance as it is conceded that the dividend due on March 25, 1934, was more than sufficient to pay a quarterly premium on that date and Reynolds died before the quarter was ended.

Reynolds made no request of the company for permission to pay premiums due after March 25, 1934, in quarterly installments, and he did not even request the company to apply the dividend on account of a quarterly premium. In fact, he took no other steps indicating a desire to have the policy continued after that date. Yet appellant contends that the company is now, after the death of the assured, required to assume such a request and interpret the contract as if such request had been granted. To state the proposition would seem to be sufficient to refute it, from both a logical and a practical standpoint.

By the terms of the contract of insurance, Reynolds was required to pay an annual premium or his protection ceased except as to certain paid-up values not in controversy. It was not a valid excuse for failure to pay the annual premium that there was due assured a dividend for a less sum: *Hollister v. Quincy Mut. Fire Ins. Co.*, 118 Mass. 478; *Terry v. State Mut. L. Ins. Co.*, 90 S. C. 1, 72 S. E. 498; *Equitable Life Assur. Society v. Pettid*, 40 Ariz. 239, 11 P. 2d 833; *Weinstein v. Mutual Tr. L. Ins. Co.*, 116 Conn. 654, 166 A. 63, 92 A. L. R. 708. Also, see notes in 92 A. L. R. 712 and 6 A. L. R. 1400.

The policy also provided that premiums could be "made payable in semi-annual or quarterly instalments in advance." It did not provide that the assured could pay the premium in quarterly or semi-annual installments without notice of change. The provision for annual payments continued until something was done by the assured indicating at least a desire to change the payments of premium to semi-annual or quarterly installments. "The option to change from the annual

to the quarterly basis rested solely with the insured, and this he never exercised. For the insurer to have changed the premium paying basis and so applied the dividend would have been a breach of the contract. For the trial court or this court to do so now would amount to writing a new contract": *Meilander v. Penn Mut. Life Ins. Co.*, 59 Ohio App. 171, 17 N. E. 2d 398, 400.

In this connection the appellant refers to the fact that the company applied the dividends after 1925 to the payment of the premium. However, the assured paid the difference between the amount of the annual premium and the amount of the annual dividend. The course of conduct thereby established was sufficient to warrant the inference that both the assured and the assurer assented to such an application, but here there was no payment of the difference or other conduct from which it could be assumed that the parties assented to a change in the contract with reference to when the premium should be paid. We are also of the opinion that the words employed in the present contract indicated that at least some notice to the company was required before the premium could be paid in quarterly installments. From a practical standpoint this would seem to be a reasonable inference, for otherwise the company and other policyholders would be placed at a decided disadvantage.

Reynolds allowed March 25, 1934, as well as the thirty-day period of grace, to pass without any action on his part. He did not pay the company the difference between the amounts of the annual premium then due and the dividend; he did not request the company to change the contract so that the premium might be paid quarterly or even indicate that he would thereafter make the payments quarterly; finally, he did not elect to apply the dividend to the payment of a quarterly premium.

On March 25, 1934, assured had the privilege of stopping payments (*Neel v. Heralds of Liberty*, 71 Pa. Su-

perior Ct. 136, 140), receiving $75.45 in cash and having a paid-up policy for about $300, or continuing the policy by paying the premium due. The face amount of the policy payable at death had been much reduced by policy loans and accrued interest and the payment of the premiums had evidently become a burden to him. The choice of courses was for him and not for the company, for it was given him by the contract. Such being the case, there certainly was no duty on the company to elect for him. After three months the company did have the privilege, after notice to him, of applying the dividend to the purchase of paid-up insurance. If the company had assumed to act for him and had applied the dividend to the payment of a quarterly premium when due, Reynolds could have sued and recovered the amount of the dividend which was payable at his option in cash: *Kelly v. Fidelity Mutual L. Assn.,* 198 Pa. 147, 47 A. 958; *Pister v. Keystone M. B. Assn.,* 3 Pa. Superior Ct. 50; *Neel v. Heralds of Liberty,* supra (p. 140).

While it was for the jury to accept or reject oral testimony we cannot avoid the observation that the uncontradicted and persuasive testimony of witnesses called by defendant indicated that Reynolds was furnished with all the blank forms necessary to continue the insurance, had he decided to do so. He did not take advantage of his opportunity. This all goes to show that the application of legal principles has not caused an injustice to be done to the plaintiff.

We find no merit in the argument of appellant that the company is estopped from setting up a forfeiture by reason of a conversation between Reynolds and one Young, a solicitor for insurance employed by the Edward A. Woods Agency, wherein it is claimed that Young failed to advise the assured as to all his options. The testimony does not support the premises of the argument as stated by the appellant and, in any event, the testimony fails to show any conduct of Young's

that would bind the company or that Young was such an agent that he had a right to bind the company so that it would be estopped from asserting a lapse of the policy. The appellant failed to meet the burden on her to show the extent of Young's authority: *Murphy v. Prudential Ins. Co.,* 30 Pa. Superior Ct. 560; *Pyrich v. Scranton Life Ins. Co.,* 94 Pa. Superior Ct. 159. The mere fact that Young had authority to solicit insurance for the insurance company did not make him a general agent with power to bind the company as to matters foreign to such solicitation and placing of insurance. It was the duty of the assured to read the contract and know its meaning.

Judgment affirmed.