The **FIRST NATIONAL BANK OF PENNSYLVANIA, Trustee**

v.

The **LINCOLN NATIONAL LIFE INSURANCE COMPANY,**
**Appellant.**

No. 86–3765.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
July 17, 1987.

Decided July 28, 1987.

Rehearing and Rehearing In Banc
Denied Aug. 14, 1987.

S.E. Riley, Jr., Russell S. Warner, John W. Draskovic, MacDonald, Illig, Jones & Britton, Erie, Pa., for appellant.

Harry D. Martin, Craig A. Markham, Elderkin, Martin, Kelly, Messina & Zamboldi, Erie, Pa., for appellee.

Before SLOVITER and STAPLETON, Circuit Judges, and SHAPIRO, District Judge *.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

The district court granted summary judgment for the beneficiary of a life insurance policy notwithstanding the contention of the insurer that the policy had lapsed for nonpayment of premium. The propriety of summary judgment is at issue.

I.

Plaintiff First National Bank of Pennsylvania, the beneficiary of a $100,000 life insurance policy issued to Sidney L. Sherman by defendant, The Lincoln National Life Insurance Company, submitted a claim to recover the net proceeds due under the policy following Sherman's death on March 11, 1985. Lincoln refused payment, claiming that coverage under the policy had lapsed due to Sherman's failure to pay his premiums. First National filed suit against Lincoln in the United States District Court for the Western District of Pennsylvania based on diversity of citizenship. After discovery, the parties filed cross-motions for summary judgment.

In support of its motion, Lincoln relied on the policy, its answers to interrogatories, and the affidavits of Himes M. Silin, the Lincoln sales agent, who handled Sherman's application for the policy, and Donald Schlagenhauf, a Lincoln Vice-President familiar with its records and record keeping procedures. The undisputed facts are that at the time of Sherman's application for life insurance, he paid his agent, Silin, a "binder premium" equivalent to a monthly

* Hon. Norma L. Shapiro, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

premium payment. The effect of paying the premium when submitting the application was that the policy would be effective as of the date the policy was issued, if it was approved. App. at 215. Otherwise, coverage would not have been effected until delivery, following payment of premium due. *Id.*

It is common practice to pay the binder premium for the lowest premium period permissible and, after approval of the policy, to change the period of premium payment to that desired by the insured. App. at 215–16. Because Sherman paid the binder premium for a month, the policy as written provides for monthly premium installments. App. at 177. Silin's affidavit states that, "Although I do not recall our specific conversation regarding the matter, I do know from the manner and amount by which he made payment of an additional premium at the time of delivery of the policy that Mr. Sherman wanted to pay the policy premium on a semi-annual basis thereafter." App. at 217. Prior to the date when Sherman's next "monthly" premium would have been due, Sherman met with Silin, and gave him a check for $2,553.59, which was the difference between a semi-annual premium and the monthly premium paid. App. at 216. According to Schlagenhauf's affidavit, Lincoln's records were then changed to reflect that Sherman's mode of premium payment was a semi-annual premium. App. at 168.

From August 6, 1975 to August 20, 1981, Sherman was billed semi-annually and paid semi-annually. The semi-annual premium paid by Sherman was $3,082.44, which was lower than if he had paid on a monthly basis.[1] Sherman failed to pay the semi-annual premium due on January 27, 1982. Under the policy's "Automatic Premium Loan" (APL) provision, if a premium was not paid during the 31–day grace period, the premium was automatically paid and charged as a loan with interest against the cash value of the policy. App. at 169. Sherman's premiums were paid in this manner for 3½ years from January 27, 1982 until July 27, 1984.

In early September 1984, Lincoln mailed Sherman on its form letter a written notice of a matter "of great importance," advising him that the payment due July 27, 1984 had not been received, reminding him that the APL provisions of his policy could only operate if there were sufficient cash value to his policy, and stating that his then current loan balance on his policy was $19,372.96 at 6% interest. App. at 170–71, 203. The notice "strongly urge[d]" him to remit the amount due. Sherman never responded to this notice.

When Lincoln sent Sherman the notice of premium due January 27, 1985, there was insufficient cash value remaining in the policy to cover the entire semi-annual premium due, which was $3,082.44. The APL provision provides that premiums would be paid by the automatic loan until the cash value of the policy could no longer support the entire premium payment. App. at 181. The 31–day grace period expired on February 27, 1985, and Lincoln notified Sherman on March 7, 1985 by mail that his policy had expired, but that an application for reinstatement could be made. App. at 207–08. Lincoln mailed a second letter to Sherman on March 28, 1985 again informing him that the policy had expired and that it might be possible to reinstate the policy. App. at 209–10. No response was received, Sherman having died on March 11, 1985. Pursuant to the non-forfeiture provision of the policy, the net cash value of the policy remaining after the grace period, $596.90, was used to purchase a single premium fully paid up life insurance policy of $975.00. App. at 174, 181.

It is First National's position that Lincoln should have applied the remaining cash value of the policy, $596.90, to cover one month's premium, which was $528.85. It argues that this would have extended coverage until February 27, 1985, and that because Sherman's death occurred within the 31–day grace period thereafter, the

---

1. The monthly premium was $528.85. Thus, had Sherman paid on a monthly basis, the premium for six months would have been $3,173.10.

face value of the policy should have been paid.

In granting summary judgment for First National in the amount of the $78,084.15, which was the $100,000 face value less the outstanding loans against the policy, the district court accepted First National's position. App. at 243. The district court relied upon the provision in the policy that the premium is to be paid monthly, and gave no weight to Lincoln's undisputed documentary and affidavit evidence that the insurance contract was subsequently modified by Sherman to a semi-annual premium mode. App. at 243.

## II.

On review of a grant of summary judgment an appellate court is required to apply the same test the district court should have utilized initially. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). A trial court may enter summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[S]ummary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ___, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The burden to demonstrate the absence of material fact issues is initially on the moving party regardless of which party would have the burden of persuasion at trial. The moving party may meet its burden by showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, ___, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

■ The dispositive issue in this case is whether the policy provision which states that the premium is to be paid in monthly installments was modified to require semi-annual payments. It is the well-settled law

of Pennsylvania that a written contract may be modified by a subsequent oral agreement. *See, e.g., Universal Builders, Inc. v. Moon Motor Lodge, Inc.*, 430 Pa. 550, 557, 244 A.2d 10, 15 (1968); *C.I.T. Corp. v. Jonnet*, 419 Pa. 435, 214 A.2d 620 (1965); *Wagner v. Graziano Constr. Co.*, 390 Pa. 445, 448–49, 136 A.2d 82, 83–84 (1957); *see also Barnhart v. Dollar Rent A Car Sys.*, 595 F.2d 914, 919 (3d Cir.1979). The modification may be accomplished by either words or conduct. *See Betterman v. American Stores Co.*, 367 Pa. 193, 200, 80 A.2d 66, 71, *cert. denied*, 342 U.S. 827, 72 S.Ct. 49, 96 L.Ed.2d 625 (1951); *Knight v. Gulf Ref. Co.*, 311 Pa. 357, 360–61, 166 A. 880, 882 (1933); *see also Cedrone v. Unity Sav. Ass'n*, 609 F.Supp. 250, 254 (E.D.Pa.1985). Moreover, a subsequent oral modification, if proven by clear, precise and convincing evidence, is valid despite a provision in the original written agreement prohibiting non-written modifications. *See Nicolella v. Palmer*, 432 Pa. 502, 508, 248 A.2d 20, 23 (1968); *see also Universal Builders, Inc. v. Moon Motor Lodge, Inc.*, 430 Pa. at 557–60, 244 A.2d at 15–16; *Wagner v. Graziano Constr. Co.*, 390 Pa. at 448–50, 136 A.2d at 84.

Lincoln introduced substantial uncontroverted evidence to show that the premium payment provision had been modified. In his affidavit, Silin, the Lincoln agent, stated that he met with Sherman after the policy was approved and issued, that he accepted a check from Sherman in the amount of the difference between the monthly premium already paid as a binder and the amount of the semi-annual premium, and that "[i]n making payment of the balance of $2,553.59, the remaining semi-annual amount due under the policy, it was Mr. Sherman's intention to change his mode of premium payment from a monthly to a semi-annual mode." App. at 216–17. Schlagenhauf, the Lincoln Vice-President, stated in his affidavit that he is familiar with the records and record keeping procedures at Lincoln and that Sherman had changed his mode of premium payment to semi-annual. App. at 168–69.

Lincoln also introduced the Lincoln branch service office client record card for Sherman's policy which contains a handwritten notation that Sherman's payment method was changed on February 11, 1975 to a semi-annual payment mode retroactively effective as of January 1975, the inception date of the policy. App. at 197; *see also* App. at 168 (affidavit of Schlagenhauf discussing client record card). Lincoln's computerized records of account for Sherman's policy show on February 17, 1975 a "CREDIT" of $2,553.59 to Sherman's account and a "billing change" on the same date. App. at 199. Thereafter, Sherman himself sent semi-annual payments for 6 1/2 years, and acquiesced in semi-annual payments taken from the cash value of his policy for three years thereafter. The affidavits of Silin and Schlagenhauf and Lincoln's computerized records all establish a course of conduct over nine and one-half years consistent with a change from monthly to semi-annual payments. *See* App. at 217, 168–69, 199–200. *See also Wisniewski v. Prudential Ins. Corp. of America*, 422 F.2d 154, 157 (3d Cir.1970) (looking at the insured's course of conduct in determining whether the written terms of the contract were modified).

First National argues that under *Reynolds v. Equitable Life Assurance Soc'y of the United States*, 142 Pa.Super. 65, 15 A.2d 464 (1940), "an insurer must abide by the express terms of the policy regarding use of cash reserves to pay premiums." Appellee's Brief at 18. First National misreads the import of *Reynolds*. To be sure, in *Reynolds* the court held that the applicable premium period was the annual period elected in writing by the insured. The court expressly recognized, however, that the written period could have been changed by a course of conduct indicating a different choice of payment periods. The court said, "The provision for annual payments continued until something was done by the assured indicating at least a desire to change the payments of premium to semiannual or quarterly installments." 142 Pa. Super. at 68, 15 A.2d at 465.

■ Since Lincoln introduced substantial unrefuted evidence, including Sherman's course of conduct, in support of its contention that the policy had been modified to require semi-annual premium payments, it was error for the district court to have granted summary judgment in favor of First National.

### III.

In most cases where we reverse the grant of summary judgment, we do so because we conclude that there is a genuine issue of material fact that precludes such a judgment. In this case, however, Lincoln argues that because its evidence that Sherman modified the contract to select a semi-annual payment is uncontroverted, we should direct summary judgment in its favor.

■ We would not have had appellate jurisdiction to consider the denial of Lincoln's motion for summary judgment in the absence of the district court's order granting the cross-motion. Once we have proper appellate jurisdiction in a case, we have broad discretion as to its disposition. The statute governing our jurisdiction provides that we may, *inter alia*, reverse any judgment, decree, or order of a court lawfully brought before us for review, and "may remand the cause and direct the entry of such appropriate judgment, decree, or order." 28 U.S.C. § 2106.

Moore's Federal Practice Treatise confirms that an appellate court may remand with directions to enter summary judgment on appellant's unsuccessful cross-motion for summary judgment where there is no dispute as to the facts which would justify judgment for the appellant. 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 56.13 at 56–348–49 (2d ed. 1987). Applying reasoning similar to that which we adopt here, the Seventh Circuit, on appeal from a dismissal of plaintiff's claim, directed that summary judgment be entered in plaintiff's favor after concluding that the case was a simple one with simple facts, there was notice and full opportunity in the district court to present affidavits or other evidence in response to plaintiff's

motion for summary judgment, and there was no genuine issue of material fact. *See Morgan Guaranty Trust Co. of New York v. Martin,* 466 F.2d 593, 599–600 (7th Cir. 1972) (per curiam). *But see Wise v. Braniff Airways, Inc.,* 622 F.2d 738, 743 (5th Cir.1980). We agree that in such circumstances, it would be a waste of judicial time to remand for trial.

We therefore consider the merits of Lincoln's argument that we should remand this case to the district court with directions to enter summary judgment in its favor. Lincoln relies on the uncontroverted evidence set forth in the Silin and Schlagenhauf affidavits and the payment records. In addition, it points out that if the premium payment had in fact been monthly, as First National argues, there would not have been sufficient funds remaining to pay a monthly premium at the time of Sherman's death. The annual premium, if paid monthly, would have been $6,346.20 (compared with the $6,164.88 Sherman actually paid annually), at which rate the policy would have lapsed several months prior to the January 27, 1985 semi-annual premium due date.

First National argues that summary judgment should not be granted in favor of Lincoln for two reasons. First it argues that there are genuine issues of material fact concerning the intention of the parties. However, First National has submitted no evidence to contradict Lincoln's evidence. In particular, it has not contradicted the statement in Silin's affidavit, apparently the only individual who dealt with Sherman as to the period for payment of premiums, that Sherman intended to change the premium payment period to semi-annual payments. As we point out above, this intent to modify is supported by Sherman's undeviating course of conduct following the initiation of the policy. First National may not simply rest on its mere denials of Sherman's intent to withstand a motion for summary judgment; instead, its response "by affidavits or otherwise ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Anderson v. Liberty Lobby,* 106 S.Ct. at 2510.

First National's second argument is that Lincoln is estopped from asserting that the policy lapsed because of nonpayment of premiums because it did not notify Sherman following the last automatic loan extended that no further loans would be extended. First National points to no provision in the policy requiring such notice nor does it point to any Pennsylvania statute or case imposing a notice requirement. Further, courts in other jurisdictions have held that there is no common law duty to provide such notice. *See, e.g., Great Horizons Dev. Corp. v. Massachusetts Mut. Life Ins. Co.,* 457 F.Supp. 1066, 1079–80 (N.D.Ind. 1978), *aff'd,* 601 F.2d 596 (7th Cir.1979); *Loss v. Mutual Life Ins. Co. of N.Y.,* 230 F.Supp. 329, 336–37 (S.D.N.Y.1963), *aff'd,* 334 F.2d 242 (2d Cir.1964).

In short, First National failed to submit any evidence contradicting the evidence introduced by Lincoln that established that the premium period had been changed to a semi-annual period and that the policy had lapsed at the time of Sherman's death. Under those circumstances, Lincoln is "entitled to judgment as a matter of law" because First National has failed to show that "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby,* 106 S.Ct. at 2511. First National had a full opportunity to answer Lincoln's summary judgment motion in the district court.

For the reasons set forth above, we will reverse the district court's order granting summary judgment for First National, and remand with directions that it enter summary judgment for Lincoln.