**JULES JURGENSEN/RHAPSODY, INC.**

v.

**ROLEX WATCH U.S.A., INC. and Montres Rolex S.A.**

Civ. A. No. 85–5605.

United States District Court, E.D. Pennsylvania.

June 27, 1989.

Alan C. Kessler, Philadelphia, Pa., for plaintiff.

David H.T. Kane and Stephen F. Ruffino, New York City, and Richard C. Rizzo, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

This action comes before the court on cross motions for summary judgment. The action arises out of Jurgensen's alleged breach of a settlement agreement which prohibited Jurgensen from marketing a particular watch bracelet. For the reasons stated below, we grant Rolex's motion and deny Jurgensen's motion.

FACTS

In 1985, plaintiff Jules Jurgensen filed an amended complaint alleging that defendant Rolex violated antitrust laws and un-

fair competition laws because Rolex threatened to sue and actually sued Jurgensen for marketing certain watches protected by defendant's trademarks, patents, tradedress, etc. (Amended Complaint at ¶ 18). In addition to the antitrust and unfair competition claims, Jurgensen seeks a declaratory judgment that a 1981 settlement agreement ("the 1981 agreement") to which Jurgensen and Rolex were parties, did not prohibit the sale of a current Jurgensen design ("the current design"). The 1981 agreement resolved a law suit brought by Rolex against Jurgensen in which Rolex sought to enjoin Jurgensen from distributing certain watch bracelets. Paragraph 11 of the 1981 agreement provided, *inter alia*, that Jurgensen shall not distribute watches with "bracelets identical or substantially identical in appearance to bracelets as exemplified in Exhibit 5" ("the prohibited design"). (Ex. C to Rolex Motion for Summary Judgment).

Before the case was assigned to us, Judge Pollak dismissed plaintiff's antitrust and unfair competition claims, leaving only the declaratory judgment claim. After extensive discovery before Magistrate Hall and subsequent discovery before this court, both parties moved for summary judgment.[1]

DISCUSSION

■ Fed.R.Civ.P. 56(c) instructs a court to enter summary judgment when the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This rule provides the court with a useful tool when the critical facts are undisputed, facilitating the resolution of a pending controversy without the expense and delay of conducting a trial made unnecessary by the absence of factual dispute. *Peterson v. Lehigh Valley District Council*, 676 F.2d 81, 84 (3d Cir.1982); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Summary judgment is inappropriate, however, where the evidence before the court reveals a genuine factual dis-

agreement requiring submission to a jury. An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence. and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511.

■ In a summary judgment action, the moving party bears the initial burden of identifying for the court those portions of the record which it believes demonstrate the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record which contradict the facts identified by the movant, and may not rest on mere denials. *Id.* at 321 n. 3, 106 S.Ct. at 2552 n. 3 (quoting F.R.Civ.P. 56(e)); *See First National Bank of Pennsylvania v. Lincoln National Life Insurance Co.*, 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence which would support a jury finding in its favor. *See Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11.

Because this is a diversity action, this court must apply state law. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties have stipulated that we should apply Pennsylvania law.

The only remaining issue in this case is whether the current Jurgensen design is identical to or substantially identical to the prohibited Jurgensen design. Jurgensen argues that to resolve this issue, under the parol evidence rule, this Court may look only to the explicit and unambiguous language of the agreement. In doing so, Jurgensen urges that we compare the current design to the prohibited design, and by noting their structural differences, we should conclude that as a matter of law the

---

1. Having extensively briefed this case, both par-    ties waived oral argument on the motions.

two bracelets are not substantially identical. Rolex argues, on the other hand, that our inquiry should not be so restrictive. Rolex insists that the agreement on its face is ambiguous, and thus we should look beyond the language of the agreement to discern its true meaning.[2] If we examine the relevant extrinsic evidence, Rolex concludes, we would find that as a matter of law the current Jurgensen bracelet is identical or substantially identical to the prohibited design. We agree with Rolex.

Determining whether contract terms are clear or ambiguous is a question of law. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1011 (3d Cir. 1980). In making this determination, Pennsylvania law does not constrain the court to the "four corners" of the document; a court may consider the words of the agreement, alternative meanings suggested by counsel, and objective, extrinsic evidence offered in support of those meanings. *Id.* at 1011. After an examination of these factors, if the court finds the contract unambiguous, the parole evidence rule precludes the court from considering extrinsic evidence in interpreting the contract. *Id.* at 1010 n. 9. If the court deems the contract ambiguous, it may consider extrinsic evidence in interpreting the terms of the contract.

The paramount consideration in the construction of all contracts is the intent of the parties. *Id.* at 1010; *Ludwig Honold Manufacturing Co. v. Fletcher,* 405 F.2d 1123, 1131 (3d. Cir.1969). Courts must not labor over the parties' subjective intent, but instead should bind the parties by the objective manifestations of their intent. *Mellon Bank,* 619 F.2d at 1009. Courts must construe contracts as a whole and avoid rendering the performance of the contract meaningless. *Ludwig,* 405 F.2d at 1131; *New Wrinkle v. John L. Armitage & Co.,* 238 F.2d 753, 757 (3d Cir.1956).

Rolex asserts that the implicit and fundamental purpose of paragraph 11 of the 1981 settlement agreement was to prevent Jurgensen from imitating a Rolex bracelet called the Jubilee. Rolex argues that although this prohibition was not explicitly stated, it becomes obvious when we consider the objective indicia of the parties' intent.

"It very often happens that when two parties are trying to integrate their agreement in a writing they omit to state some fundamental assumption on the basis of which, as both of them well know, the agreement is being made. The mere existence of the writing should never be held to exclude testimony of such an unstated fundamental assumption. The truth of this assumption—the existence of the fact that is assumed—is a condition of the obligation of the written promise; ... Justice requires the courts, with the advantage of hindsight, to fill some of these gaps. Evidence of the facts tending to show that such a fundamental assumption was made, though not expressed in the writing, should never be excluded by any 'parole evidence rule.'" 3 Corbin on Contracts Sec. 590 (1960).

*Kohn v. Kohn,* 242 Pa.Super. 435, 364 A.2d 350, 355 (1976). Rolex cites to several "objective" indicia in support of its interpretation of the contract: (1) the Rolex 1980 complaint brought to enjoin Jurgensen's unfair competition including the copying of the Rolex President design. (Ex. D to Rolex Motion for Summary Judgment); (2) Jurgensen's request, prior to the 1981 agreement, for approval of a design prohibited under the agreement (the prohibited design). (Ex. B to Jurgensen Reply Brief at ¶ 4); (3) the similar treatment of the two prohibited designs in the 1981 agreement, i.e., attaching a prohibited Jurgensen design in each case without reference to the

---

**2.** There is some dispute concerning whether Rolex has conceded that the agreement is unambiguous. For example, in his deposition, attorney for Rolex David Kane asserted that the agreement is unambiguous. Jurgensen interprets this assertion as an admission that we need not consider extrinsic evidence. On the contrary, we understand Rolex's position to be that an examination of extrinsic evidence is necessary to discern the intent of the parties. Thus, we may assert that Rolex considers the agreement ambiguous on its face, albeit unambiguous after a review of the extrinsic evidence.

name of the Rolex design which the Jurgensen design allegedly copied. (Ex. C to Rolex Motion for Summary Judgment at ¶¶ 10 & 11); (4) the 1981 agreement as a whole which protected various trademarks and designs from imitation; (5) The appearance of the Rolex Jubilee bracelet. (Ex. G to Rolex Motion for Summary Judgment); (6) evidence of the established history of the Rolex Jubilee bracelet including its reference in the *Vintage American & European Wrist Watch Price Guide.* (Ex. I to Rolex Motion for Summary Judgment); and (7) the use of the words "Rolex style" in a third-party catalogue to refer to the current Jurgensen design. (Ex. H–6 to Rolex Motion for Summary Judgment). Our analysis of these factors compels the conclusion that the contractual term "substantially identical" in the 1981 agreement is ambiguous, and that to resolve the ambiguity we must interpret that term in relation to the Jubilee bracelet.

When we contextualize the agreement, it becomes clear that both parties intended that paragraph 11 of the 1981 agreement protect a Rolex bracelet. In 1980, Rolex brought suit against Jurgensen to enjoin its unfair competition including Jurgensen's copying of the Rolex "President" design. During settlement negotiations, Jurgensen requested Rolex's approval for an additional design (the prohibited design). (Ex. B. to Jurgensen Reply Brief at ¶ 4). Rolex did not approve the design, and in paragraphs 10 and 11 respectively, the agreement prohibits the marketing of the alleged President copy and the additional design. The language of both paragraphs is almost identical except that they refer to different products. Neither paragraph refers explicitly to any Rolex watch or design. Rather, the agreement makes explicit reference to the prohibited Jurgensen designs.[3] It is abundantly clear, however, especially given that paragraph 10 protects the President design[4], that its sister paragraph 11 also protects some Rolex design: Rolex did not sue Jurgensen in 1980 for marketing watches it considered unfashionable; Rolex sued Jurgensen for copying their products.

From the evidence proffered in this case, we are forced to conclude that the product to which paragraph 11 implicitly refers is the Rolex Jubilee bracelet. First, when we compare the current Jurgensen design to the Jubilee, it is clear that to any observer, the Jurgensen bracelet is strikingly similar if not *identical* to the Rolex Jubilee. At minimum, it is closer in design to the Jubilee than is the prohibited design. Examining all three bracelets in relation to each other, one must conclude that without any evidence to the contrary, the agreement protected the Rolex Jubilee. Second, in its answers to Jurgensen's interrogatories, Rolex asserts that the problem with the prohibited Jurgensen design was that it was too similar to the Rolex Jubilee. (Ex. 5 to Rolex Response to Jurgensen Motion for Summary Judgment). Similarly, in his deposition, Melvin Kane, attorney for Rolex, testified that paragraph 11 referred to the Jubilee and that in negotiating the agreement, he and Paul Maleson, attorney for Jurgensen, discussed the Jubilee. (Ex. I to Rolex Motion for Summary Judgment). Finally, a third-party catalogue refers to the current Jurgensen watch as "Rolex style," and the *Vintage American & European Wrist Watch Price Guide* includes a photograph of and lists the Jubilee as a watch that Rolex has marketed since the 1950's or 1960's. Although we are without testimony concerning the status of these publications, the reference to the Jubilee in one publication and the acknowledgment of the "Rolex style" of the current Jurgensen at least suggests the recognition, if not the prominence of the Jubilee in the watch business community. Significantly, Jurgensen has not offered any evidence that disputes the implications of these publica-

---

**3.** The agreement also prohibits the marketing of products offending various other Rolex designs and trademarks.

**4.** The 1981 agreement settled the Rolex suit alleging that Jurgensen copied the President de-

sign. (See Ex. C and C to Rolex Motion for Summary Judgment). Jurgensen does not deny that paragraph 10 protects the Rolex President design.

tions.[5]

Jurgensen is unable to point to any evidence that would suggest an alternative and reasonable explanation for the prohibitions of the agreement. Instead, Jurgensen merely denies that the parties either discussed the Jubilee during the 1981 settlement negotiations or that Jurgensen knew of the existence of the Jubilee. (Ex. H–7 to Rolex Motion for Summary Judgment). Thus, Jurgensen expects this Court to conclude that the agreement does not protect any Rolex bracelet. These conclusory denials fail to create a genuine issue for trial. *See Celotex*, 477 U.S. at 321, 106 S.Ct. at 2551. Examining the objective evidence of the parties' intent, rather than their subjective intentions, *see Mellon*, 619 F.2d at 1009, we are unable to accept Jurgensen's contention that it was unaware of the Jubilee. First, according to the *Vintage Watch Guide*, Rolex had marketed the bracelet since the 1950's or 1960's. Second, given that Jurgensen and Rolex were negotiating Jurgensen's imitative conduct, Jurgensen could not have been unaware of Rolex's long-established bracelets. Finally, and most importantly, the remarkable similarity between the current Jurgensen design and the Jubilee belies Jurgensen's alleged ignorance of the Jubilee's existence: it is difficult to imagine that Jurgensen created such a design without copying the Jubilee.[6] Given the abundance of objective evidence in Rolex's favor, and Jurgensen's complete inability to offer any explanation for the intent of the agreement, no reasonable juror could conclude that the agreement did not protect the Jubilee.[7]

Rather than offering an explanation for the agreement, Jurgensen rests its argument on the position that the agreement is unambiguous, and that we may not consider any extrinsic evidence in construing its terms. Jurgensen argues that the plain meaning of the agreement requires *only* a comparison between Jurgensen's current design and the Jurgensen prohibited design. We can not accept this position. Granted, it is clear from the agreement that we must compare the current Jubilee to the prohibited design, but it is not clear from what perspective we are to make the comparison. If we were to look only to the language of the agreement, and thus compare the two Jurgensen bracelets, the literal language would not even compel the comparison that Jurgensen suggests—i.e., comparing the structure, links etc. The "plain meaning" of substantially identical permits an inquiry that would find any watch with links violative of the agreement, or any gold watch, or any watch without a leather bracelet, etc. Just as any of those interpretations would be absurd, so too would be the interpretation that would exclude evidence of the obvious and fundamental purpose of the agreement; as Jurgensen must admit, we can not interpret this agreement in a vacuum.[8] "Exter-

---

**5.** Even without this evidence we would reach the same conclusion. Given the subject of the negotiations, the appearance of the current design, and Jurgensen's failure to offer any other explanation, we would find that the Jubilee must serve as a reference point in interpreting the agreement.

**6.** There are of course other possible explanations for the genesis of the current Jurgensen design, but again Jurgensen has not offered any. Rolex's position remains uncontradicted.

**7.** Even if we were to conclude that Rolex was unable to show that the agreement was intended specifically to protect the Jubilee, rather than some other design or designs, we would still find that the broad purpose of the agreement was to prevent imitative conduct, and that in marketing the current design, Jurgensen violated the terms of the agreement. As we discuss below, it flies in the face of reason to assume

that Jurgensen could agree not to market one bracelet that is somewhat similar to a Rolex bracelet, regardless of which bracelet or bracelets, and then market another bracelet that is practically identical to the same or some other Rolex bracelet. In other words, Jurgensen could not have honored its contractual obligation by making its conduct more objectionable to Rolex that the original conduct leading to the prohibition.

**8.** Judge Pollak, in an earlier stage of the proceedings, also found that extrinsic evidence would be admissible to explain the terms of the contract. Judge Pollak indicated that the agreement did not make clear whether the term "substantially identical" should be interpreted from the point of view of a watch business expert or from the point of view of the consumer. (Ex. A to Jurgensen Response to Rolex Reply Brief). Judge Pollak held that parole evidence "with

nal indicia of the parties' intent other than written words are useful, and probably indispensable, in interpreting contract terms." *Mellon Bank*, 619 F.2d at 1010.

Jurgensen argues that if the agreement were intended to protect the Jubilee bracelet, Rolex should have explicitly referenced the Jubilee in the contract. In support of this proposition, Jurgensen cites to a 1983 settlement agreement between Rolex and another watch company, Remex Time Corp. ("Remex"), in which Rolex attached the Jubilee as an exhibit. We find that at best, this later agreement is relevant to show the somewhat imprecise drafting of the Rolex/Jurgensen agreement; it is not probative of the meaning of that agreement. The intention of the parties at the time of entering the contract governs its interpretation. *New Charter Coal Co. v. Mckee*, 411 Pa. 307, 191 A.2d 830, 834 (1963).

Having examined the relevant extrinsic evidence, we conclude that to define "substantially identical" one must consider the Jubilee bracelet as the reference point. Any other construction of the contract would render it meaningless. *See New Wrinkle*, 238 F.2d at 757; *New Charter Coal*, 191 A.2d at 834–35 (where language of a contract is ambiguous, courts prefer an interpretation that makes agreement rational and reasonable). Thus, we must compare the Jurgensen current design with the prohibited design, as the agreement requires, but we must do so with the Jubilee bracelet as a reference point. In doing so, we are not, as Jurgensen suggests, changing the meaning of the agreement or varying its terms. *See New Charter Coal Co. v. Mckee*, 191 A.2d at 833 (the court must not remedy the fecklessness of a contracting party in such a way as to make a contract for the parties that they did not make themselves); rather, we are using the extrinsic evidence to explain the terms of the contract, to ascertain the intent of the parties and thus to interpret the meaning of the agreement.

When we compare the two bracelets, we find as a matter of law that the current design is identical or substantially identical to the prohibited design. As Rolex argues, although defining the limits of "substantially identical" might, on some occasion, present a question of fact, the minimum scope of "substantially identical" must include a design that looks more like the Jubilee than the prohibited design looks like the Jubilee.[9] No reasonable jury could conclude otherwise.[10] We find it out-

---

respect to the meaning, the genesis of this agreement" would be discoverable (admissible). "The proffered evidence, as I understand it, would not be to contradict, but to explain … the terms of the agreement." (Ex. 1 to Rolex Reply). Rolex argues that we should adopt as the law of this case Judge Pollak's position that parole evidence is admissible to demonstrate the intent of the parties. *See Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 168 (3d Cir.1982) (judges of coordinate jurisdiction sitting in the same case should not overrule the decisions of each other). We need not address this issue except to say that our reading of the contract does not overrule Judge Pollak's determination on the admissability of parole evidence.

9. In his affidavit, the president of Jules Jurgensen, Morton Clayman, describes the physical characteristics of the current Jurgensen design and the Jurgensen prohibited design: "[The prohibited design] consists of two outer satin links with one individual polished center link with a center retaining clip…. [The current design] consists of two outer satin links with three individual highly polished center links." (Ex. N to Jurgensen Motion for Summary Judgment).

Not surprisingly, his description of the current design comports exactly with the physical characteristics of the Rolex Jubilee; the Jubilee consists of two outer satin links with three individual highly polished center links.

10. It is well established that without invading the province of the jury, we may compare the bracelets at issue. For example, in *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 869 (2d Cir.1986), the court of appeals upheld a district court's grant of summary judgment in a trademark infringement case in which the judge found as a matter of law that two designs were "substantially similar" in appearance. In that case, the defendant allegedly copied the plaintiff's stitching pattern which appeared on jeans pockets. The court of appeals held that the appellants could not challenge the district court's conclusion on substantial similarity; "the two patterns are virtually identical when viewed from any appreciable distance." *Id; See also Knorr–Nahrmittel A.G. v. Reese Finer Foods, Inc.*, 695 F.Supp. 787, 793–94 (D.N.J. 1988) (in trademark infringement action, comparing visual similarity of two package designs, court finds designs "substantially similar" and

rageous that Jurgensen agreed not to market a watch that was similar in appearance to a Rolex watch and then, while disingenuously claiming adherence to the contract, marketed a watch that is practically identical to the offended Rolex. Jurgensen's position makes a mockery of contract interpretation and tortures common sense. Therefore, for the reasons adduced above, we grant summary judgment in favor of Rolex and against Jurgensen.

grants summary judgment in favor of plaintiffs).